**Herbert MORRIS, Steven Nachman et al., Plaintiffs,**

v.

**Gerald BURCHARD et al., Defendants.**

**No. 69–Civ. 116.**

United States District Court, S. D. New York.

Jan. 6, 1971.

Morrison, Paul & Beiley, New York City, for plaintiff Steven Nachman; by Elkan Abramowitz and Peter H. Morrison, New York City, of counsel.

Carro, Spanbock & Londin, New York City, for all other plaintiffs; by Allen Green, New York City, of counsel.

Kramer, Lowenstein, Nessen & Kamin, New York City, for Lynbar Mining Corporation, Ltd., Bernard B. Jessel, B. B. Jessel Investments, Ltd., and Hans Werner; by Geoffrey Kalmus, New York City, of counsel.

Garey & Garey, New York City, for J. L. Goad & Co., Limited; by Daniel F. Cohalan, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Grace Canadian Securities, Inc., and George C. Reiss; by Myron Cohen and Hobart Brinsmade, New York City, of counsel.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for Moore & Schley, Inc.

Harvey A. Eysman, New York City, for Dunhill Securities Corporation.

Hale, Russell & Stentzel, New York City, for Wilson Murrow International, Ltd. and Lewis C. Burwell, Jr.; by Louis Kurrelmeyer, New York City, of counsel.

Whitman & Ransom, New York City, for Rankin & Co; by Robert Newman and Jack Hadlock, New York City, of counsel.

Shaw, Bernstein, Scheuer, Boyden & Sarnoff, New York City, for Steve Gorlin and Harry Gorlin; by Merton Sarnoff, New York City, of counsel.

Havens, Wandless, Stitt & Tighe, New York City, for Sidney V. Fillingim; by Adelbert C. Matthews, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for J. Spencer Davis; by Ellis W. McCracken, New York City, of counsel.

Satterlee, Warfield & Stephens, New York City, for Johnston Lemon & Company; by George Adams, New York City, of counsel.

Stamer & Haft, New York City, for J. H. Crang & Company.

Louis R. Teig, New York City, for Thomas Delledonne.

Strasser, Spiegelberg, Fried & Frank, New York City, for Loeb, Rhoades & Co., and Gerald Burchard.

Michael M. Platzman, New York City, for Norman Wulwich.

POLLACK, District Judge.

The plaintiffs seek a ruling that they may maintain this suit as a class action under Rule 23 F.R.Civ.P., Sections (b) (1) (A) and (B) and (b) (3). The present complaint is set forth in two counts and represents a consolidation, pursuant to Court order dated May 11, 1970, of the claims asserted in four separate suits filed in this Court. Two of these suits were by public investors and two of the suits were in reality cross-claims by certain of the defendants named in the original actions against other defendants.

The claims herein were initiated by 25 purchasers of the common stock of Lynbar Mining Corporation, Ltd., (Lynbar hereafter) purporting to sue on behalf of themselves and all other purchasers similarly situated against the corporation, its insiders and brokers, 26 defendants in all, who made sales of such stock.

Briefly, Count I of the complaint asserts the public sale of unregistered stock of Lynbar by the 26 defendants through the use of the mails and instruments of interstate commerce, in violation of Section 5 of the Securities Act of 1933. Count II of the complaint charges fraud in the sale of Lynbar's stock to the public by 14 of the 26 named defendants, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Commision and in violation of Section 17(a) of the 1933 Act.

Plaintiffs contend that they represent a class which consists of "those past and present shareholders of Lynbar who purchased their stock in the United States from on or about February 1, 1968 and thereafter and who sustained loss thereby."

For the reasons given hereafter, plaintiffs will be allowed to maintain Count I

as a class action. However, Count II does not qualify and may not be maintained as a class action under Rule 23 F. R.Civ.P.

## COUNT I

Plaintiffs state that acting singly and in concert "defendants caused over 1,000 American investors, including plaintiffs and other members of their class, to purchase approximately 1,000,000 unregistered Lynbar shares in about a four-month period from February 1, 1968 through May, 1968". Nearly all the stock acquired by the named plaintiffs herein was purchased from one broker, Dunhill Securities Corp. (now defunct); one plaintiff purchased shares from defendant Grace Canadian Securities, and one of the purchasers who has indicated interest in this suit, bought Lynbar shares both from defendants Loeb, Rhoades and from defendant Rankin.

In resisting a ruling that this action may be maintained as a class suit, the defendants contend that the action does not meet the requirements of Rule 23(b) (3).[1] They argue that there cannot be a common question of law or fact premised on a Section 5 violation because Section 12(1) of the Act of 1933 contemplates that a purchaser may proceed *only* against his immediate seller for a violation of Section 5. Section 12(1) reads:

> Any person who offers or sells a security in violation of Section 5 * * * shall be liable to the person purchasing such security from him * * *.

Consequently, the defendants insist that they are not liable to any *class* of Lynbar stock purchasers, but are liable, if at all, only to the particular persons to whom

each sold directly. This is sometimes referred to as the "privity requirement".

The plaintiffs meet the argument based on lack of privity by pointing to the allegation in the complaint that the defendants all acted in concert with each other. Plaintiffs contend that an aider and abettor is liable for a violation of the Securities Laws. Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D. N.Y.1963) (Palmieri, J.); Anderson v. Francis I. duPont & Co., 291 F.Supp. 705 (D.Minn.1968); Brennan v. Midwestern United Life Ins. Co., 259 F. Supp. 673 (N.D.Ind.1966); *cf.* 3 Loss, Securities Regulation 1716, n. 105 (2d ed. 1961). Plaintiffs also suggest as apposite here, a Court ruling in a fraud case brought under Section 10(b) of the 1934 Act which upheld a class litigation upon a "semblance of privity". Gann v. Bernzomatic Corp., 262 F.Supp. 301 (S. D.N.Y.1966) (McLean, J.). See also, Cochran v. Channing Corp., 211 F.Supp. 239 (S.D.N.Y.1962) (Dawson, J.); *cf.* Loss, *supra* at 1716.

It is clear that the central issue in this case concerns the sale of unregistered Lynbar common stock by the defendants acting in concert during a narrow period of four months. The sales pursuant to a common scheme to distribute such stock without registration, in violation of federal law, if proved, would entitle every purchaser to rescind or to receive damages in a suit brought timely. This is a sufficient nexus on which to maintain a class suit and the determination of the issue is not embarrassed or overwhelmed by the need to decide it on behalf of 1,000 purchasers in a single suit. If that principal substantive issue is decided in favor of the

---

1. A class action cannot be maintained under other portions of Rule 23, viz., (b) (1) (A) or (B), the other bases cited by plaintiffs. The statute of limitations has run, 15 U.S.C. § 77m, and apparently no other purchaser has commenced an action to enforce a liability created by Section 5 of the Act. Hence, there

is no danger of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class; nor would an adjudication here substantially impair or impede the interests of members not parties to the suit.

plaintiffs, the residual matters that will be left for determination on behalf of each individual entitled to recover are relatively manageable as a matter of court administration.

The plaintiffs have already been approached by 100 other purchasers who are named in Schedule B, annexed to their papers, and who have requested an opportunity to participate herein. The class is so numerous that joinder of all members is impracticable. The questions of law or fact are common to all who purchased the unregistered stock during the four-month period mentioned and these questions predominate over any questions affecting only individual members. The underlying claims of the present plaintiffs are typical of the claims of the class, and the plaintiffs appear fairly and adequately qualified to protect the interests of the class as representative parties.

A class action on the circumscribed claim asserted here is superior to other available methods for the fair and efficient adjudication of the nub of the controversy.[2]

Accordingly, an order may be submitted permitting Count I to be maintained as a class action, pursuant to Rule 23 F.R.Civ.P. In conformity with the purposes of Rule 23(c) (2), the order shall contain, *inter alia*, a description of the class, be conditional and propose means of giving the best notice practicable under the circumstances to members of the class. Provision shall be made for individual notice to all members who can be identified through reasonable effort. Each of the defendants shall be required to supply, for purposes of giving such notice, the identity of all those who purchased Lynbar stock from them during the relevant period.

## COUNT II

The second claim names only 14 of the 26 defendants and of these only four had direct dealings with any of the plaintiffs. The complaint charges that the named defendants sold Lynbar common stock by means of some or all of the untrue oral statements of material fact set forth therein, and by omission to state the material facts necessary to make the statements made not misleading. The 12 alleged misrepresentations are set forth in the margin.[3]

These "fraud" charges are said to have constituted violations of Section 10 (b) of the 1934 Act and Rule 10b-5 thereunder, as well as Section 17(a) of the 1933 Act. In addition to the oral

---

2. The present ruling does not set aside any substantive requirement under the 1933 Act, either of privity, or any other. Even if a defendant illegally sold unregistered stock, each member of the class separately, may have to establish privity or a legal substitute therefor as well as the appropriate relief due to him.

3. (a) the state of development of the "kali" water solutions potash mining process; .

(b) the need for testing the process and the cost thereof;

(c) the cost of building an operational plant to utilize the process;

(d) the nature and substance of Lynbar's contracts for production and distribution of potash;

(e) the competition in the potash industry; :

(f) the financial condition of Lynbar;

(g) the speculative nature of Lynbar's business operations;

(h) trading by insiders and control persons in the stock of Lynbar, including a distribution by them of such stock to American investors at approximately $2 to $4.75 per share;

(i) the acquisition cost of such shares by control persons, insiders, and other persons;

(j) efforts to influence, control and manipulate the market price for such shares;

(k) the use of the proceeds from sales of Lynbar stock; and

(l) the need for registration with the Securities and Exchange Commission of Lynbar's stock offered for sale by insiders, control and other persons.

misstatements by the named defendants, the defendant Jessel is alleged to have issued an unduly favorable press release on behalf of Lynbar in 1968, and the stock of Lynbar was allegedly touted to various brokerage houses.

The alleged misrepresentations were not standardized; they appear largely to have been a disconnected series of oral statements, which must have varied from person to person and seemingly not made pursuant to a common course of conduct. No one of the variety of misstatements was necessarily brought to the attention of each individual purchaser. The twelve diversified alleged oral misrepresentations set forth in the complaint cover such a vast range that it is not remarkable to find that the complaint omits any claim that each plaintiff and the members of the putative class relied on each or the same misrepresentations. The most that can be distilled from the elusive form of the allegations of the complaint is that the purchasers relied merely upon *oral* statements whose content, extent and shades of meanings would as a practical probability vary in respect of each of the class members and with each of the defendants.

The propriety of a class action when misstatements are oral is generally considered to be doubtful. 6 Loss, Securities Regulation 3947 (2d ed. Supp. 1969).

The Advisory Committee's notes on the amendment to Rule 23, state:

* * * a fraud perpetrated on numerous persons by the use of *similar misrepresentations* may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. *On the other hand*, although having some common core, *a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds*

*or degrees of reliance by the persons to whom they were addressed.*

39 F.R.D. at 103 (Emphasis added.)

In Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y.1968), the Court noted:

* * * Class actions in securities cases are maintainable where there has been a standardized misrepresentation to a group through a prospectus, proxy statement, financial statements or form letter. * * * or where the conduct of directors or trustees is alleged to defraud a group of security holders or common beneficiaries of the trust * * *. In these cases the critical issues common to all members are the falsity of the representations and the defendant's knowledge in the former and breach of fiduciary duty in the latter. * * *

* * * [L]iability for churning * * * depends upon the nature of the account, the transactions in the account and the understanding between the parties. There may be factors which are common to many in such relationship but *there are also present individual and personal ingredients* * * * which differ with respect to each person transacting business with the broker. * * *

*The charge of oral misrepresentations* * * * *are in the same category as the above* * * *. The misrepresentations* * * * *might have been similar with respect to all members of the class, but they were not standardized* in the same sense as standardized misrepresentations appearing in a prospectus, financial statements and advertisements * * *. *Such differences are not the type of variations which are inherent in the garden variety of securities class actions.* * * * 288 F.Supp. at 462–463 (Emphasis added.) (Citations omitted.)

In a recent antitrust suit permission was refused to maintain a class action against a major oil company on behalf of all affected gasoline dealers, alleged

to number 140. The case is of interest here because it deals with the critical question of the likely administration of a host of individual claims in a class context. Citing Moscarelli v. Stamm, *supra,* the Court wrote:

> There are two basic and predominating questions. Each is a question of fact. The first predominating fact question is whether or not Shell refused to sell the plaintiff and other dealers Shell gasoline for sale in stations owned by plaintiff and other individuals; * * * That is a question of fact; or, with respect to 140 dealers, it is not one question, but 140 separate questions of fact. Individual inquiry would be required.

> * * * [There is another] question of fact—persuasion v. coercion. As applied to 140 dealers, there are 140 questions of fact. Our conclusion is therefore that the overall predominating questions presented by the plaintiff's claim are questions of fact and while the same questions of fact exist with respect to the claims of any other member of the class, a conclusion as to one member is not common or determinative, or even relevant when the question arises with respect to another member. The "predominating" questions are individual ones and not common. Lah v. Shell Oil Co., 50 F.R.D. 198, 199–200 (S.D.Ohio, 1970).

A similar statement may be made, with equal justification, concerning the fact situation here presented to the Court. The showing required by Sections 17 of the 1933 Act and 10(b) of the 1934 Act and Rule 10b-5 thereunder, is likely to involve highly individual proofs; there are, in effect, 1,000 questions of fact concerning what oral representations were made to each member of the putative class. Given that the fraud alleged here is claimed to have been accomplished with the use of one press release and a number of apparently varied, unconnected and admittedly oral misstatements, on dissimilar subject matters, no significant question of fact common to all members of the putative class predominates over individual questions raised by the complaint.

Where as here, the alleged representations are not similar, and were not made in identical or even similar situations, there necessarily had to be material variation in what the purchasers relied on and whether they did rely on any of these asserted misrepresentations.

In a case such as this, the issue of reliance could involve a separate trial or proceeding for each member of the class, or nearly 1,000 separate trials, even assuming that somehow a means for a common trial can be developed through which the issue of liability could be efficiently resolved. Whether these trials would individually require a jury resolution under the requirements of the Seventh Amendment is a serious problem. *Cf.* Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

As the Court noted in Lah v. Shell Oil Co., 50 F.R.D. 198, 200 (S.D.Ohio, 1970):

> It further appears to this Court that the difficulties likely to be encountered in the management of this case as a class action outweigh the benefits that might be expected from its maintenance as such. * * * This [case involves a jury problem]. While the new rules on their face permit severance of issues in jury trials, the problem of separate juries still remains. United Airlines v. Wiener, 286 F.2d 302 (9th Cir., 1961).

It cannot be lightly overlooked that as a class gets larger it may transform a litigation into a gigantic burden on the Court's resources beyond its capacity to manage or effectively control. The practical possibility, then, is that the use of the procedural remedy of a class suit might provide an administrative need, if not, incentive, to erode and impair observance of the substantive law requirements for compensable claims under the Securities Laws.

It has been stated that Courts, in a proper case, should order maintenance of a class claim, and that such individual issues as reliance and damages should be dealt with, individually, after the common questions have been litigated. In Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), the Court of Appeals wrote:

> We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of 23(b)(3) will often require the use of the "sensible device" of split trials. Frankel, [Some Preliminary Observations Concerning Civil Rule 23,] 43 F.R.D. 39 at 47. 406 F.2d at 301.

This statement, which has been eagerly cited by plaintiffs at bar, was not made in the context of a substantial number of *oral* variations in the alleged misrepresentations. Moreover, it was made in a context where it was assumed that reliance would be substantially established by the very nature of the proofs on the issue of liability.

Even when a suit has been based on a single or integrated series of alleged misrepresentations, as in a prospectus, no Court seems to have had occasion to utilize the "sensible device" of a split trial on the question of reliance where that remains actually to be proved. Excepting questions of damages, Courts simply have not tried 100 or 1,000 claims on left-over substantive aspects of a claim, proof of which is actually required, after a common theorem has been established. In many instances, damages became a mere matter of administering a formula derived from the resolution of the issue of liability. Consequently, damages do not pose the same problem that is presented by the issue of reliance which is not subject to formula treatment where there are oral representations.

The harrowing experience of administering a multitude of individual trials of individual claims, of reliance, for example, seems not yet to have been faced by any trial court which has declared a suit to be a class action. It is remarkable that cases which have gone through the crucible of a complete trial are not readily to be found although Rule 23, as amended, has been in existence for about four years.

"If a class of interested litigants is not already in existence the court should not go out of its way to create one without good reason." Berley v. Dreyfus & Co., 43 F.R.D. 397, 398–399 (S.D.N.Y.1967) (Croake, J.). Class action, so instinct with benefits, is also fraught with mischievous effects, capable of overwhelming the judicial machinery and of imposing both unfair burdens and untoward pressures on the participants.

It is undoubtedly an attribute of market speculation that when investment hopes have been disappointed by market conditions, it is all too easy to inflame a desire to saddle the speculation on another; and suggestions by some purchaser of oral misstatements as the inducement for purchases of the same stock are too readily assimilated by other unsuccessful speculators. Such suggestions are prone to create grievances where none previously existed or were contemplated until a bugle call to class association is sounded. In such cases, it is preferable to proceed with the claims of those before the Court, without prejudice to subsequent class action treatment if, upon further development of the litigation, it appears appropriate. Richland v. Cheatham, 272 F.Supp. 148, 155 (S.D.N.Y. 1967).

The fraud charges alleged in Count II are unsuited for treatment in a class action; it would not be superior to other methods, nor would it be reasonably manageable. The plaintiffs' motion to

maintain a class claim thereon is accordingly denied.

Settle order on notice within 15 days hereof after consultation among counsel thereon.