**Rhonda Kaye GOLDSTEIN et al.,**
**Plaintiffs,**

**v.**

**REGAL CREST, INC., et al.,**
**Defendants.**

**Civ. A. No. 70–2910.**

United States District Court,
E. D. Pennsylvania.

March 30, 1973.

**398**

Thomas C. Kubelius, Bethlehem, Pa., Gus Milides, Easton, Pa., for plaintiffs.

Fred C. Aldridge, Jr., C. Gary Wynkoop, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HUYETT, District Judge.

Plaintiffs bring this civil action against defendants for violations of Sec-

tions 12(1), (2) and 17 of the Securities Act of 1933, 15 U.S.C.A. §§ 77*l*(1), (2) and 77q (1933 Act); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rules 10b–5 and 10b–6 of the Securities Exchange Commission (SEC); and common law fraud, neglect, breach of trust, mismanagement, malfeasance and nonfeasance. Plaintiffs seek to pursue this action on behalf of themselves and a class of those similarly situated. This Court on June 27, 1972 permitted the case to go forward as a class action on a tentative basis. Defendants have filed a motion to vacate that order and to strike the class action allegations in accordance with Fed.R.Civ.P. 23(c)(1).

Plaintiffs allege a complicated scheme engaged in by defendants to defraud persons who purchased the stock of International Resources Inc. (IRI) from salesmen in the Bethlehem office of Fahnestock & Co. (Fahnestock).[1] Plaintiffs claim that the stock was sold to the general public without the registration statement required by Section 5 of the 1933 Act, 15 U.S.C. § 77e, although the sale did not qualify for the exemption in Section 3(a)(11) of the 1933 Act, 15 U.S.C. § 77c(a)(11), and the number of purchasers exceeded the twenty-five permitted in Pennsylvania law for an intrastate offering, Section 2(f)(10) of the Pennsylvania Securities Act, Pa.Stat. Ann. tit. 70, § 32(f)(10). The scheme involved the use of escrow agreements which salesmen gave to purchasers to evidence the sale of the stock without requiring the transfer of stock until after the proper registration had been made.[2] Plaintiffs allege that in at-

1. Defendants in the present action include John Pruso, Doris B. Baron, George H. Young and Maurice Pollon, who were all directors, officers and principal shareholders in IRI; Fahnestock & Co., a member of New York Stock Exchange doing business in Bethlehem, in whose offices the alleged illegal sales were made; Frank Lawson, the manager of Fahnestock's Bethlehem office; and Regal Crest, Inc. (Regal Crest), the successor in interest to IRI. The salesmen in the Fahnestock offices who allegedly made the sales were not named as defendants in this action.

2. The escrow agreements, which appear to have been uniform, read:
"I hereby certify that I, (name of salesman) am holding in escrow for (name of purchaser) (number of shares) shares of investment in International Resources,

tempting to persuade them and members of the public to purchase this stock, the salesmen employed in the Fahnestock office and controlled by the defendants in this action used misrepresentations and omissions of material facts. These included misrepresentations of the prospects of the stock and the interest of Bethlehem Steel Co. and United States Steel Co. in purchasing IRI, and the failure to disclose certain material facts concerning stock-splits, stock options, registration difficulties and other significant matters.

Plaintiffs also complain that after the sales had been made defendants continued to misinform them in order to prevent them from bringing a lawsuit similar to this one. They charge that defendants issued a false prospectus in September, 1969, which did not list them as shareholders, in order to deceive them into believing that the stock would eventually go public. They also allege that defendants made misrepresentations in February, 1970 concerning a redemption fund in order to prevent plaintiffs and others from filing an action.

In June, 1970, IRI merged with Regal Crest. Plaintiffs assert that they were never notified of the impending merger nor were they given the opportunity to vote on it. The only information they received was from a newspaper release which contained false data about the merger.

The history of plaintiffs' pursuit of this case as a class action is a dreary one. In the complaint, filed on October 21, 1970, plaintiffs made an allegation in paragraph 51 that the plaintiffs should be permitted to represent the class of more than one hundred persons who purchased shares of IRI in reliance upon the representations of defendants.

Plaintiffs' class action complaint failed in nearly every respect to satisfy the requirements of Local R.Civ.P. 45 for pleading a class action. Besides failure to include proper headings, plaintiffs did not make the proper reference to the portions of Fed.R.Civ.P. 23 which make this action maintainable as a class action and did not make the appropriate allegations to support that claim. *See* Loc.R. Civ.P. 45(b). Plaintiffs also failed to petition the Court for a determination under Fed.R.Civ.P. 23(c)(1) within 90 days after filing of the complaint as required by Loc.R.Civ.P. 45(c). These failures are symptomatic of the failure of plaintiffs' counsel to be of assistance in the determination of the class action issue.

On June 27, 1972, the Court ordered that the action should proceed as a class action on a tentative basis. Subsequent to this Order notices were sent out to 112 purported class members in accordance with Fed.R.Civ.P. 23(c)(2). Nineteen persons requested exclusion from the class. A proof of claim form was also mailed with the notice to the class in accord with the practice in Korn v. Franchard Corp., 50 F.R.D. 57 (S.D.N. Y.1970) and these were filed on behalf of the ninety-three remaining persons.[3] Defendants have now filed a motion to vacate the order permitting this case to proceed as a class action.

■ Plaintiff in seeking a class action must satisfy the court that the prerequisites of a class action are present, Fed.R.Civ.P. 23(a), and that the case is maintainable as a class action, Fed.R.Civ.P. 23(b). Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968). A case is maintainable under Fed.R.Civ.P. 23 (b)(3) only if questions of law and

---

Inc. to be transferred to your name after 31 days when the stock goes public.
(Signature of salesman)
(Signature of purchaser)"

3. In the determination of this issue no use has been made of the proofs of claim that

have been filed. The Second Circuit in Korn v. Franchard Corp., 456 F.2d 1206 (2 Cir. 1972) expressed serious reservations about putting much reliance on such materials due to the manner in which they were most likely compiled.

fact common to the members of the class predominate over questions affecting only individuals, and if a class action is a superior method of adjudicating the claims. Defendants contend that common issues of fact and law do not predominate over individual issues and that the interests of certain purported class members conflict with those of other members.

■ Determination that common questions of law and fact predominate depends on an analysis of each count separately. It is not necessary that the complaint in its entirety be permitted to go forward as a class action. Some counts may proceed for the class while others go forward only for named plaintiffs. *See* Morris v. Burchard, 51 F.R. D. 530 (S.D.N.Y.1971).

Plaintiffs in the first three counts allege causes of action arising under Sections 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77l(2) and 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. These claims concern the means employed in the sale of the IRI stock to members of the purported class. Each cause of action involves misrepresentation and omission of material facts on which plaintiffs claim they relied when they purchased escrow agreements.[4]

It appears clear from the proceedings to date in this case that the securities were sold to plaintiffs and to the members of the purported class through oral communications. Plaintiffs have not produced any written materials which were submitted to purchasers concerning the stock in order to induce them to purchase. The thrust of their allegations is that the salesmen in the Fahnestock offices through oral discussion with prospective purchasers deceived them by misstatements and omissions. The only document in connection with the sales was the escrow agreement which all purchasers accepted in lieu of the stock.

Defendants assert that the extensive use of oral statements renders these counts improper for class action treatment. They contend that this fact prevents the court from making the determination which is necessary in a 23(b)(3) class action that common questions of law and fact predominate. Their argument is that oral statements, upon which the claim of each person must be largely built, are different for each person and would have to be individually proved.

■ The standard is that the questions common to the class "predominate" over individuals' questions. This assures that the purpose of economy is actually served. Advisory Committee Note to Rule 23, 39 F.R.D. 69, 103 (1966). It, of course, does not mean that all questions of law and facts must be common. The Advisory Committee Note, for example, made clear that individual damages were proper for a separate determination and would not defeat a class action. 39 F.R.D. at 103.

■ Defendants assert that the question of reliance upon misrepresentations and omissions is a question of fact individual to each purchaser. This has long been an issue of controversy in securities fraud class actions. *See*, Note, The Impact of Class Actions on Rule 10b–5, 38 U.Chi.L.Rev. 337, 345 (1971). It would appear, however, that courts have been steadily removing reliance as a concern. The thrust of recent decisions has been to treat the requirement of materiality in the securities laws as incorporating the element of reliance to the extent that it is still necessary.

In Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) the Supreme Court held that plaintiffs in a 10b–5 case who allege omissions of ma-

---

4. Count III, the 13b–5 count, also alleges a violation in connection with the merger of Regal Crest.

terial facts need not demonstrate positive reliance upon the withheld facts but must show only that "a reasonable investor might have considered them important in the making of this decision." 406 U.S. at 153–154, 92 S.Ct. at 1472. The Third Circuit Court of Appeals in Kahan v. Rosenstiel, 424 F.2d 161 (3 Cir. 1970) anticipated that decision and held that proof of reliance was not an independent element of proof in a 10b–5 case. *See also*, Kohn v. American Metal Climax, Inc., 458 F.2d 255, 269 (3 Cir. 1972). The decision applied the reasoning of Justice Harlan in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), which dealt with Section 14(a) of the 1934 Act, that the determination that a misstatement or omission is material "indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder . . ." 396 U.S. at 384, 90 S.Ct. at 621.

Reliance has also been held not to be a necessary element in a Section 12(2) action. Gilbert v. Nixon, 429 F.2d 348 (10 Cir. 1970). This rationale would appear to have the same force in a Section 17(a) cause of action which also prohibits misstatement or omission of material facts. *See* Kahan v. Rosenstiel, *supra*, 424 F.2d at 174.

*Mills* and *Affiliated Ute Citizens* involved omissions of material facts. In *Affiliated Ute Citizens* the court stressed that ". . . securities legislation enacted for the purpose of avoiding frauds [should] be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" 406 U.S. at 151, 92 S.Ct. at 1471. This applies equally to actual misrepresentations and it is difficult to discern any real distinction in considering the problem of reliance. It should also be noted that even if reliance were a necessary element of these counts, it has been considered a proper subject for individual determination after the common ele-

ments have been determined in a class action. *See* Green v. Wolf Corp., 406 F. 2d 291 (2 Cir. 1968).

Defendants' main contention, however, is that these counts are not proper for class action treatment because of the widespread use of oral communications in the sale of the stock. With the exception of the escrow agreement it does not appear that any of the communications with prospective purchasers were written. Defendants assert that the misrepresentations and omissions, since they were oral necessarily present individual questions of fact and that they are of such significance that any common questions cannot be said to predominate.

Defendants rely primarily upon Morris v. Burchard, 51 F.R.D. 530 (S.D.N. Y.1971) and Moscarelli v. Stamm, 288 F.Supp. 453 (E.D.N.Y.1968) to support their position that oral misrepresentations do not support a finding of predominate common issues of law and fact. These decisions stressed that while there may be misrepresentations and omissions in oral discussions which were similar with respect to each member they were not standardized. Such misrepresentations are susceptible to material variations. Moscarelli v. Stamm, 288 F.Supp. at 462. The court in Morris v. Burchard, *supra*, 51 F.R.D. at 535, was dismayed by the prospect of separate trials to determine what oral representations were made to each member of the class, a necessary element of the proof under these sections. *Accord,* Speros v. Nelson, Civil No. 72–642 (D. Ore., filed Feb. 7, 1973).

The rationale of these decisions is not undermined by the fact that courts have permitted class actions to proceed where not all of the members of the class were exposed to all of the misleading materials. The crux of those cases is that there has been a common course of conduct, engaged in by the defendants, evidenced by a series of similar, though not identical, standardized statements which seek to induce the public to purchase the

security. *See* Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9 Cir. 1964); *Note*, Security Fraud Class Actions, 36 Geo.Wash.L.Rev. 1150 (1968). In Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966) the court, faced with purchases made during two distinct periods and with at least seven financial statements, found that the variations in the statements were not material since they were interrelated, cumulative and purported to represent the corporation's position at the time of issuance. The court expounded a "domino theory" of misstatements whereby one false statement to the public causes the next false statement. *Accord*, In re Penn Central Securities Litigation, 347 F.Supp. 1327, 1344 (E.D.Pa.1972).

Oral misstatements, however, do not permit the same inference of common conduct. Such statements clearly cannot be standardized, particularly when they are made by several different persons. It is also clear that, having been made solely to individuals, they are not likely to have the same causal relationship to future misstatements in order to demonstrate a course of common conduct. Since no statements were ever made to the public, but only to individuals, any course of conduct which was common to all members of the class would have to be developed by individual proofs. It cannot be said that common questions predominate over these individual questions which go to the very heart of the charges that defendants violated Sections 12(2) and 17(a) of the 1933 Act and Rule 10b–5 in the sale of these securities.

Plaintiff, in the third count, also alleges that defendants violated Rule 10b–5 in connection with the merger of IRI with Regal Crest. Plaintiffs claim that the rule was violated through the failure of defendants, who were aware of their position as escrow holders, to notify them of the merger, to permit them to be heard, or to vote on the subject in any manner. They also allege that IRI caused a false statement concerning the merger to appear in a newspaper, the Philadelphia Inquirer. Plaintiffs still retain the escrow agreements which entitle them to shares of IRI.

A merger is a purchase and sale of stock within the purview of Section 10(b) and Rule 10b–5. Securities and Exch. Comm'n v. National Sec., Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1963). A person who is defrauded in violation of Rule 10b–5 in a merger of a company in which he is a stockholder has a right to sue and have a reasonable remedy for any wrong. *See* Kohn v. American Metal Climax, Inc., 458 F.2d 255, 270 (3 Cir. 1972). Plaintiffs contend that their position as holders of IRI stock which has not been redeemed makes them sellers under Rule 10b–5. *See* Vine v. Beneficial Finance Co., 374 F.2d 627 (2 Cir. 1969). We will accept that claim at this time.

Plaintiffs' claims concerning the merger appear to be common to the class. The duty to inform stockholders of a proposed merger and to give them an opportunity to vote is common to all shareholders. The failure to communicate on the subject is a violation common to all holders of escrow agreements. Common questions of law and fact predominate on this issue.

The division of Count III into two separate parts for the purpose of the class action does not raise insurmountable barriers. A court may permit a class action to go forward in one count but not in another. Morris v. Burchard, *supra*. The count here involves two separate transactions which allegedly involve 10b–5 violations. We will simply treat it as though the two allegations were in separate counts. Any problems at trial concerning liability under this count could be clarified by specific interrogatories to the jury.

The fourth cause of action charges defendants with a violation of Rule 10b–6 of the Securities and Exchange Commission, 17 C.F.R. § 240.-

10b–6. This rule prohibits an underwriter of a particular distribution, an issuer of the distribution, or a broker, dealer or anyone who is participating or has agreed to participate in the distribution of securities, from purchasing such security for any account in which he has a beneficial interest or to attempt to induce anyone to purchase such security or right until he has completed his participation in such distribution. The facts which would have to be proved to demonstrate such violation would be common to all purchasers of escrow agreements. At this point we will permit this count to go forward as a class action.

Plaintiffs' next claim is that the sale of the escrow agreements for the IRI stock violated Section 12(1) of the 1933 Act, 15 U.S.C. § 77*l*(1). That section provides a private cause of action to a purchaser of a security against any person who offers or sells a security in violation of Section 5 of the 1933 Act, 15 U.S.C. § 77e. Section 5 prohibits the use of any means or instruments, of interstate commerce to sell any security unless a registration statement is in effect. Plaintiffs allege that no registration statement was ever in effect for the IRI stock, and that the salesmen used telephones to consummate sales.

The facts which would be necessary to establish liability under this section are common to all purchasers. There is, however, another issue which presents difficulties similar to those in the first three counts. Plaintiffs allege that when they became aware of the fraud they were convinced by false representations to refrain from filing suit. These representations were made orally to the plaintiffs. They included a promise of a redemption fund, a threat that such a suit would delay registration, and a representation that a statement had been filed with the SEC.

The statute of limitations applicable to an action under Section 12(1) is one year after the violation on which the action is based but no more than three years after a bona fide public offer. 15 U.S.C. § 77m. Defendant Fahnestock filed a motion in December, 1970 to dismiss this count on the grounds that the sales of the unregistered IRI stock occurred more than one year prior to the commencement of this action. Judge Fullam, to whom the case was assigned at that time, denied the motion on the grounds that plaintiffs alleged facts which would either have tolled the statute or estopped defendants from asserting the bar of the statute. Defendants contend that this question of statute of limitations is not common to all members of the class and that it is of such significance that it prevents a finding of predominance of common questions for this count.

The violation of Section 5 that plaintiffs claim is that defendants sold unregistered securities by means of interstate commerce. These sales to named plaintiffs had all occurred by June 13, 1969, more than one year before the complaint was filed on October 21, 1970. Plaintiffs, however, allege various representations to them by defendants which they claim lulled them into deferring their complaint.

 It is necessary in a securities action of this type that plaintiffs allege and prove compliance with the statute of limitations. *See,* Bryant v. Uland, 327 F.Supp. 439 (S.D.Tex.1971); Newberg v. American Dryer Corp., 195 F.Supp. 345, 352 (E.D.Pa.1961) (and cases cited therein). Since the alleged sales took place more than a year before suit was instituted proof of these representations which allegedly lulled plaintiffs into temporarily foregoing litigation is a necessary element of plaintiffs' case under this count.[5] These representations were

---

5. Plaintiffs in their brief in opposition to defendant Fahnestock's motion to dismiss this count argued that the statute would

not begin to run until after the delivery of the stock, which has not yet occurred. The offense of "delivery after sale" is

oral and, thus, we are faced with the same lack of standardized material from which to make findings as in the first three counts. At trial testimony would be necessary from each member of the class to establish his right to recover. Courts have found that such individual questions of limitations prevent a finding that common questions of law and fact predominate. Speros v. Nelson, *supra;* Sharp v. Hilleary Franchise Systems, Inc., 56 F.R.D. 34 (E.D.Mo.1972). For the same reasons as Counts I, II and part of III, this count may not go forward as a class action.

██ Plaintiffs' sixth and last .cause of action is a potpourri of common law complaints against defendants. Without a more specific definition of the rights asserted in this count and a showing that a class action is proper it cannot be permitted to go ahead in that form. Certainly some of the claims in the count involve the individual questions with which we have dealt in this memorandum. Plaintiffs have failed to carry their burden on this cause of action at this time. We will, however, give them the opportunity to clarify the facts giving rise to this count and to demonstrate the propriety of a class action.

Our conclusion is that this action may properly proceed as a class action on the part of Count III which relates to the merger and on Count IV. Defendants' motion to vacate the order permitting a tentative class action is granted for the rest of the complaint, with the exception of Count VI on which we await plaintiffs' memorandum. At this time we find no merit in defendants' contention of conflict between primary and secondary purchasers in the two counts in which the class action shall proceed. The class shall remain all persons who purchased escrow agreements for stock of IRI, now Regal Crest, from Ronald Hoffman, Sidney Bahr, Edwin Schrader

or Craig Muff and who at the time of filing action were still owners or whose heirs and legal representatives are owners of the escrow agreements. This class may be altered if that should appear necessary at a later date.

---

separate from "sale", which is the offense alleged here. *See* Buchholtz v. Renard, 188 F.Supp. 888 (S.D.N.Y.1960). Plaintiffs can certainly not rely on the statute of limitations applicable to an offense which has not been committed.