Harold **FOX**, Plaintiff, for himself and on behalf of all others similarly situate

v.

**PRUDENT RESOURCES TRUST** et al.

v.

Jerome **GERBER** and Sam Spielman.

**Civ. A. No. 73–972.**

United States District Court, E. D. Pennsylvania.

Nov. 5, 1975.

Charles M. Golden, Sidkoff, Pincus, Greenberg & Golden, Philadelphia, Pa., for plaintiff.

Edward Greer, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., Joseph Calderon, Linden & Deutsch, New York City, Judith R. Cohn, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., Harry I. Rand, Botein, Hays, Sklar & Herzberg, New York City, for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff, Harold Fox, a limited partner in the 1969 Prudent Resources Oil and Gas Program (hereinafter Program), brought suit against defendant Prudent Resources Trust (hereinafter Prudent),

the sole general partner in the Program, and against various named individuals instrumental in running the Program. Jerome Gerber and Sam Spielman have been joined as third-party defendants. Plaintiff alleges violations of Rule 10(b)–5 under the Securities Exchange Act of 1934; Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); the Investment Company and Investment Advisors Acts, 15 U.S.C. § 80a–1 et seq.; and Pennsylvania state fraud provisions. Plaintiff presently seeks a determination under Fed.R.Civ.P. 23(c)(1) and Local Rule 45(c) that this suit be maintained as a class action under Fed.R.Civ.P. 23 (a) and subsections (b)(1)(B), (b)(2), and (b)(3) thereof. Some of the defendants, including Prudent Resources Trust, have not opposed plaintiff's motion for class action determination, but other defendants have opposed it. For the reasons set forth below, the motion will be granted under subsection (b)(3).

The facts of this case are set forth in this Court's Opinion of September 18, 1974, reported at 382 F.Supp. 81. Further discovery by the parties has produced some refinements in the facts which will be reported as they become relevant. Where the facts are disputed, heavy weight will be given to the moving party's pleadings. See *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), *cert. denied, sub nom., Glen Alden Corp. v. Kahan*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

### I. *Plaintiff's Proposed Class*

Plaintiff defines the proposed class as "all of the limited partners in the 1969 Prudent Oil and Gas Program." There are 148 limited partners who purchased a total of 636 partnership "units" in the Program at the price of $5,000 per unit.

### II. *Requirements of Rule 23*

Subdivisions (a) and (b) of Rule 23 provide the conditions under which a class action may be maintained. Subdivision (a) sets out requirements which must be met, but are not alone sufficient, for the maintenance of *any* class action. Subdivision (b) has three subparts. If the requirements of any one subpart are met, along with the requirements of subdivision (a), a class action may be maintained under that subpart. If the action is maintained under (b)(3), members of the class may exclude themselves from the effect of the judgment. The specific requirements of each subdivision and the subparts thereto are discussed below in conjunction with the facts of this case.

Under subdivision (c) of Rule 23 the determination of whether the suit is to be maintained as a class action is to be made "[a]s soon as practicable after the commencement of an action." Local Rule 45(c) requires that the motion for determination be filed within 90 days of the filing of the complaint, unless the period is extended for good cause.[1] The requirement that the determination be made at an early stage when the facts are disputed and discovery incomplete mandates that the court have flexibility to later amend or reverse its determination. That flexibility is provided in subpart (c)(1) of Rule 23. The court has power to dismiss the suit as a class action, maintain it as to only some of the counts of the complaint, or create subclasses as to one or more counts of the complaint. Rule 23(c)(4).

As the facts become more complete prior to or during the trial, I may find it necessary to qualify the grant of this motion. Although I am not required to make factual findings at this time, *Interpace Corp. v. City of Phila-*

---

1. The more than two years that have passed since the complaint was filed is the result of awaiting the conclusion of protracted efforts by the parties to effect a settlement of the litigation and by efforts on the part of the defendants to have the complaint dismissed under Fed.R.Civ.P. 12(b).

*delphia,* 438 F.2d 401 (3d Cir. 1971), I will explain herein the grounds on which the motion is granted so that the parties will be aware of areas where subclasses may be required and areas that may turn out to be inappropriate for a class action suit altogether.

### III. *Right to a Class Action Determination Under Rule 23(a)*

■ The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." The class here consists of 148 individuals or corporations. While the absolute number of class members is not the sole determining factor, generally the courts have found the numerosity requirement fulfilled where the class exceeds 100. 3B Moore's Fed.Practice ¶ 23.05. The plaintiff's class satisfies the numerosity requirement. *See Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa.1972) (71 members); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D. Pa.1968) (25 members). In this case joinder of all the class members would not be impossible (plaintiff claims to have the names and addresses of each member), however, only impracticability, not impossibility, is required. Individual communication with each member of the class would demand a considerable expenditure of time and energy. Objecting defendants offer no reasons for placing this burden on the plaintiff.

Although I find the numerosity requirement fulfilled, if subclasses are later required under one or more counts of the complaint, the class action may fail because this requirement is no longer met. At this time, I cannot say what would be the minimum permissible number of class members, but I would certainly examine very closely any subclass of less than 25 persons. More than 25 might not make joinder extremely impracticable, but there is a second consideration: denial of class action status opens the door to a multiplicity of suits.

Considerations of efficiency and limitations of judicial resources properly weigh in the determination. Unless defendants can demonstrate some prejudice to their interests by allowing the suit to proceed as a class action (other than the possibility of greater monetary liability), there would be no reason to burden this court with multiple identical law suits where one will achieve the same result. *See Philadelphia Electric Co., supra* at 463.

■ Rule 23(a) secondly requires that there be "questions of law or fact common to the class;" but not every question of law and fact must be common to every member of the class. The instant case meets this requirement. There is a similar requirement, but under a stricter standard, in subsection (b)(3). *See* 3B Moore's Fed.Practice ¶ 23.06–1. Subsection (b)(3) requires that "questions of law or fact common to the members predominate." Since the plaintiff seeks to maintain this action under (b) (3), I will discuss the "common question" requirement in considering the (b)(3) motion, since, if the plaintiff satisfies the (b)(3) standard, he will necessarily satisfy the less rigid requirements of 23(a)(2).

■ The third requirement of 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The standard for typicality is ambiguous, but under any view, the plaintiff's claims meet the requirement. *See* 3B Moore's Fed.Practice ¶ 23.06–2. Insofar as the members of the class are identically situated, the claims of Fox will be identical to the claims of the class. Each limited partner's interest is identical except for the number of partnership units owned. The number of units owned can affect only the amount of recovery of the class member, and therefore is not material to whether the plaintiff's claims are "typical." There is one area, however, in which plaintiff's claims may not be identical to every other member of

the class: The claim that Prudent violated the Securities Exchange Act of 1934 is based in part on allegations that oral statements embodying fraudulent misrepresentations were made to the plaintiff in the course of offering the units for sale. Not every limited partner heard these oral statements, and only those who did would have a claim based thereon. However, Fox asserts that the Prospectus, presumably seen by every limited partner, contained similar misrepresentations. On the record as it presently exists, it is unclear how many of the limited partners heard the alleged oral misrepresentations at other times and places. Mindful that further development of the facts may indicate the necessity for subclasses, the present uncertainty as to the oral statements does not preclude a finding that plaintiff's claims under the present facts are typical. *See Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir. 1969). The problems presented by the claims based on the oral misrepresentations are discussed more fully in the portion of the opinion dealing with the maintenance of the class action under subdivision (b) (3).

Subsection (4) of 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). Defendants' strongest objection is on the ground that plaintiff fails to meet this criterion. Of course in class action suits it is always rather anomalous

that the defendants should concern themselves with the adequacy of plaintiff's representation of the class, *see Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975), but whatever the defendants' motive in contesting Fox' ability to do so, I am satisfied that Fox will fairly and adequately represent the class. Fox points to the following factors as making him a proper representative: His purchase of ten units of the Program for $50,000 makes his financial interest large enough to insure that he will vigorously prosecute the suit. His attorney is experienced in class action suits, and there are no conflicting antagonisms between Fox and the members of the class.[2]

It is with the last asserted qualification that the defendants take issue. Fox has for the past several years owned over 7,000 shares of stock of Prudent Resources Trust. At present he holds 7,584 shares of Prudent. As a stockholder of Prudent, Fox has an economic interest on both sides of this litigation. Defendants suggest that Fox might compromise the interests of the class in order to protect his interests as a stockholder.

In many cases the ownership by the class representative of shares of the defendant's stock would preclude the plaintiff from acting as the class representative. In this case the conflict is de minimis.[3] As of May 1973, Prudent had 3,368,252 shares of stock outstanding, therefore Fox' ownership interest in Prudent is approximately two-tenths of one percent of the total stock. On the other hand, his ownership interest in the Program is approximately eight times as

2. The absence of conflicting interests must be qualified as to a few of the class members. It has come to my attention through the briefs and discussion with counsel that defendant Bruce Gene Leader and third-party defendants, Jerome Gerber and Sam Spielman, either directly or indirectly, have limited partnership interests in the Program. Their interests, of course, conflict with Fox', but this will not prevent Fox from fairly representing the class.

3. The following cases are cited by defendants in support of their position that the plaintiff's interests are not wholly compatible with, but rather are antagonistic to, the class: *Quirke v. St. Louis-San Francisco Ry.,* 277 F.2d 705 (8th Cir. 1960); *Traylor v. Marine Corp.,* 328 F.Supp. 382 (E.D.Wis.1971); and *Maynard, Merel & Co. v. Carcioppolo,* 51 F.R.D. 273 (S.D.N.Y.1970). These cases are of no asssitance in determining whether plaintiff may represent the class under 23(a)(4).

great. In addition, one-half of the limited partners of the Program also hold Prudent stock individually. In one sense every member of the class is a stockholder of Prudent Resources Trust: On January 1, 1971, I. Theodore Leader, the former managing trustee of Prudent, now deceased, transferred 63,600 shares of Prudent stock to Prudent in trust solely for the limited partners. Stock dividends have increased the number of shares held in trust by Prudent to 70,659. Although these shares have never been registered or distributed, it is not disputed that the stock owned by the limited partners in proportion to their ownership interest in the Program. Each of the 148 limited partners is entitled to 111 shares of Prudent stock for each Program unit he owns, and thus Fox' conflicting economic interest is present in greater or lesser degree in every limited partner. If, at some point in this litigation, it can be demonstrated that Fox' potential losses as a Prudent stockholder from his law suit are significant compared to his gain as a class member, it may become necessary for another class member to intervene as a representative plaintiff to represent the limited partners who do not own Prudent stock individually,[4] otherwise Fox will be deemed to meet the requirements of 23(a)(4). Subdivision (e)'s requirement that any compromise or dismissal of the suit be approved by the court provides additional protection against the plaintiff pursuing the suit in other than the best interest of the class. *See Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 (E.D.Pa.1975).

IV. *Maintenance of the Action Under Section (b)(1)(B), (b)(2), and (b)(3)*

Plaintiff argues that the proposed class action meets the requirements of,

and therefore may be maintained under, subsections (b)(1)(B), (b)(2) and (b)(3) of Rule 23. While his arguments have merit, an examination of the substance of plaintiff's claims persuades me that the action should be maintained under subsection (b)(3).

A. *(b)(1)(B)*

■ Subsection (b)(1)(B) permits a class action to be maintained where the prosecution of separate actions by individual members of the class would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fox argues that the court's disposition regarding the Prudent stock held in trust will necessarily affect every member of the class. To a degree this argument is correct. However, plaintiff's complaint alleges that the Prudent stock has dropped in value since it was placed in trust, and that the class members have been damaged by defendants' failure to register and deliver those shares in 1971, at which time they had a value greatly in excess of their present value of about $1 per share. The damage plaintiff claims and the relief he seeks are primarily monetary. If less than all of the limited partners have their rights in the unregistered stock determined, the remaining class members will not be impaired in their ability to bring suit to obtain damages. Fox also alleges that the defendants are insolvent, and therefore, if some of the limited partners recover damages under the decision in this case, other limited partners would not be able to recover, and thus this suit affects the interest of all the class members. There is nothing in this record

---

4. *See* subsections (d)(2) and (d)(3) of Rule 23. *See also Oppenheimer v. F. J. Young & Co.*, 144 F.2d 387, 390 (2d Cir. 1944); *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42, 46 (S.D.N.Y.1966); Advisory Committee's Note, 39 F.R.D. at 104, 106, 107;

3B Moore's Fed.Practice ¶ 23.73. *Cf.* Comment, *Adequate Representation, Notice and the New Class Action Rule: Effectuating Remedies Provided by the Securities Laws*, 116 U.Pa.L.Rev. 889, 898 (1968).

indicating that the defendants are insolvent, rather the facts suggest that Prudent would remain solvent even if it were required to pay all of the claimed damages, amounting to slightly over $1,000,000. Maintenance of the suit, therefore, under subsection (b)(1)(B) does not seem appropriate.

**B.** *(b)(2)*

 For many of the same reasons the action should not be maintained under subsection (b)(2), which permits a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Again plaintiff points to the stock held in trust for the limited partners and the necessity for injunctive relief. Plaintiff also argues that the defendants continue to be the directors of the Program and owe the limited partners a fiduciary duty; that the limited partners must rely on Prudent to conduct the Program; that the Program is still in existence and still has assets; and that the limited partners will suffer further losses unless the defendants are "removed or restrained." While the equitable powers of the court include the power to remove Prudent as the general partner, it seems most unlikely that I could realistically make such an order. If Prudent were to be removed as general partner of the Program, the Program would no longer exist, since there does not appear to be any entity which could be substituted for Prudent. Likewise, it would be unrealistic to order the other defendants, who are Board members of Prudent allegedly involved in the management of the Program, to fulfill their fiduciary duties. The court might remove one or more of the individual defendants from their position or require them to take specific actions, e. g., registering and distributing the stock, but it is extremely unlikely that the court would undertake

to oversee the management of the Program in a venture in which the court is totally lacking in expertise. If the class is entitled to relief, the relief necessarily will be predominantly monetary. The Advisory Committee's Note on subsection (b)(2) states: "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. 69, 102. If the plaintiff prevails, the class may be entitled to partial injunctive or declaratory relief, but such injunctive and declaratory relief can be granted under subsection (b)(3). *See Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D.Pa.1974). It is thus both inappropriate and unnecessary to allow the class action under (b)(2).

**C.** *(b)(3)*

 The subdivision under which this suit may be appropriately maintained as a class action is (b)(3), which permits a class action where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication."

The same questions of law and fact, with one exception, are applicable to every limited partner. All of plaintiff's claims revolve around the sale of the Program units to the limited partners; the Prudent stock which is held in trust; and the operation and management of the Program. As to the Prudent stock held in trust and the operation of the Program, clearly all of the questions of law and fact touching on liability are identical. In addition, however, plaintiff alleges that the limited partners purchased the units in part on the basis of fraudulent statements made by the defendants during meetings held for the purpose of promoting the Program. Not all of the purchasers were present at each of these meetings. Assuming that there was variation in the representations made at the

different meetings, and that not all of the limited partners were present at each meeting, these oral representations and the attending legal issues would not be common to the class.

The Advisory Committee's Note to subdivision (b)(3) considers this problem:

"[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." 39 F.R.D. at 103.

In *Goldstein v. Regal Crest, Inc.,* 59 F.R.D. 396 (E.D.Pa.1973), the court held that common questions of fact did not predominate over claims based on widespread oral communications, noting, however, that "courts have permitted class actions to proceed where not all of the members of the class were exposed to all of the misleading materials. The crux of those cases is that there has been a common course of conduct, engaged in by the defendants, evidenced by a series of similar, though not identical, standardized statements which seek to induce the public to purchase the security. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9 Cir. 1964)." 59 F.R.D. at 401–02. *See also In re Penn Central Securities Litigation,* 347 F.Supp. 1327 (E.D. Pa.1972); *Dorfman v. First Boston Corporation,* 62 F.R.D. 466, 474 (E.D. Pa.1974).

In *Goldstein,* the statements were made by a number of salesmen to numerous persons solely on an individual basis. In the instant case, the plaintiff appears to rely only on oral statements made before a few relatively large groups. Plaintiff also relies on the Prospectus to support his allegations of fraudulent misrepresentations. The alleged oral misrepresentations bear on plaintiff's 10(b)–5 claim, state fraud claims, and claims under the Investment Advisors Act, but the record is insufficiently developed at this time to determine exactly how many meetings were held, how many class members were present at each meeting, or how similar the statements made at the meetings were. At this stage I will not deny the class action request when the extent of variation in oral representations is unknown. The fact that plaintiff need not prove that each purchaser relied on the oral misrepresentations in his decision to purchase the Program units mitigates the significance of any variation in the oral statements. *Dorfman, supra* at 470. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *Kohn v. American Metal Climax,* 458 F.2d 255, 269 (3d Cir. 1972); *Kahan v. Rosenstiel,* 424 F.2d 161, 173 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).[5] If, at a later stage, it becomes evident that plaintiff, in order to make out a claim at all, will rely on the oral statements made by the defendants in soliciting limited partners and, if the statements made at some meetings prove to be materially different from those made at other meetings, it may become necessary to create subclasses of those who did attend the meetings at which materially different statements were made.

---

5. Defendants cite two additional cases in opposition to the maintenance of this suit under (b)(3): *Jarblum v. Frigitemp Corp.,* CCH 1973 Fed.Sec.L.Rep. ¶ 94,009 (S.D. N.Y.1973); and *Pearson v. Ecological Science Corp.,* CCH 1973 Fed.Sec.L.Rep. ¶ 94,030 (S.D.Fla.1973). *Jarblum* is not on point, and *Pearson* can be distinguished on the ground that the court held that plaintiffs must prove reliance.

Subdivision (b)(3) also requires that the class action be superior to other alternatives for a fair and efficient adjudication of the case. Rule 23(b)(3) sets forth four factors which are to be considered in making the determination:

> . . . (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability of undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of a class action."

Each of these factors weighs in favor of permitting a class suit in this instance. There appears to be no reason for the individual members of the class to control the prosecution of separate actions; on the contrary, a class action will be a highly efficient means of trying the claims involved, without prejudice to the interests of the individual class members or rights of the defendants. No other litigation has been commenced by potential members of the class, and there appears to be no particular disadvantage to concentrating the litigation of all claims in this forum. The final consideration is the difficulty likely to be encountered in the management of the class action. The addition of further class representatives, if that should become necessary, will present no difficulties. The only foreseeable complication is the division of the class into one or more subclasses, which would complicate the trial by requiring that some issues be separated by subclass. This complication will not be unduly burdensome or confusing to the jury so long as the number of issues which must be separated from the primary claims is small. If the number of sep-

arate issues becomes sufficiently large, it is always possible to have separate trials.

In conclusion, plaintiff's proposed class action meets the requirements of subdivisions of Rule 23(a)(1)–(4) and (b)(3).

Plaintiff's motion for declaration of a class consisting of all owners of limited partnership interests in the 1969 Prudent Resources Oil and Gas Program will be granted under Rule 23(b)(3). Counsel will confer concerning the appropriate form and content of proposed notices for compliance with the requirements of Rule 23(c)(2), and shall submit same to the court within 20 days.

