**Stanley SANDERS, Plaintiff,**

v.

**LUM'S INC., Melvin Chasen, Lehman Brothers, Benjamin Simon, Investors Diversified Services, Inc., Eugene Sit, James Jundt, IDS New Dimensions Fund, and Investors Variable Payment Fund, Defendants.**

**No. 70 CIV. 5331.**

United States District Court,
S. D. New York.

April 12, 1976.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff.

Rogers & Wells by Guy C. Quinlan, New York City, for defendants Lum's Inc., and Melvin Chasen.

Simpson Thacher & Bartlett by James J. Hagan, Michael V. Corrigan, New York City, for defendant Lehman Brothers.

White & Case by Laura B. Hoguet, New York City, for defendant Benjamin Simon.

Donovan Leisure Newton & Irvine by John K. Hendricks, New York City, for defendants Investors Diversified Services, Inc., Eugene Sit, James Jundt, IDS New Dimensions Fund, Inc., Investors Variable Payment Fund, Inc.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff has moved for an order pursuant to Rule 23(c)(1), Fed.R.Civ.P., declaring that this action may be maintained as a class action on behalf of all individuals who purchased the common stock of Lum's, Inc., on January 9, 1970. For the reasons set out below, this motion is granted.

The plaintiff himself purchased 100 shares of the common stock of Lum's on January 9, 1970 at $18 per share and $25 in commissions. On that afternoon, an announcement was made that Lum's confidential internal projections had been revised downward and trading in the stock was suspended. When trading was resumed on the New York Stock Exchange on the next trading day, the price of Lum's common stock was approximately $14.00.

The plaintiff contends in this action that Melvin Chasen, the president of Lum's at that time, had advised the defendant Benjamin Simon that Lum's was revising downward its internal projections. Benjamin Simon was an institutional salesman for the defendant Lehman Brothers. Plaintiff maintains that Simon, after receiving the information from Chasen, called defendant Sit, an employee of defendant Investors Diversified Services, Inc. (IDS), and told him the substance of the adverse information he received from Chasen. Sit, in turn, allegedly gave this information to a fellow IDS employee, defendant Jundt. Plaintiff maintains that Sit and Jundt thereafter caused two mutual funds in the IDS group, defendants IDS New Dimensions Fund and Investors Variable Payment Fund, to sell their holdings of Lum's stock. On the morning of January 9, 1970, these two funds sold their 83,000 shares of Lum's at approximately $17.50.

As regards the plaintiff, Stanley Sanders, there is no evidence in the record to indicate that he had in his possession or had access to any information regarding Lum's common stock which was not generally available to all members of the investing public.

In view of these asserted facts, it appears to this court that the resolution of the factual and legal issues relative to plaintiff's claim would also be dispositive of any claim that any other person who purchased on that day would have. The common issues include: a) whether, in fact, Chasen furnished Simon with adverse, undisclosed material information concerning Lum's; b) whether Simon, in turn, transmitted that information to the IDS defendants; c) whether the IDS defendants acted in reliance upon that information; and d) whether defendants acted in these transactions with *scienter.* Given this identity of issues, it seems clear that this action fulfills the mandate of Rule 23(b)(3) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In this regard, it should be specifically noted that the record shows that on the particular date in question there were in excess of 500 separate transactions in Lum's stock on the New York Stock Exchange, with most of these involving 500 or fewer shares. Thus, were these various causes of action not joined under a class action, it seems unlikely, given the practicalities involved, that the vast majority of the members of the class would litigate their claims.

In actuality, none of the defendants has strenuously contested any of the above conclusions. Indeed, all of the defendants except Lehman Brothers and Benjamin Simon have entered into a settlement agreement with plaintiff which is expressly preconditioned on the granting of the instant motion. Such settlement provides that these defendants shall pay on a pro rata basis an aggregate of $100,000 to individual claimants, assuming that the stipulation of settlement is approved by the court after hearing, upon such notice to members of the class as the court shall direct.

Defendants Lehman Brothers and Simon do contest the instant motion, but their contentions do not go to the appropriateness of a class action *per se* in this case, but rather to the fact that the motion for class certification is untimely. They cite specifically that provision of Rule 23(c)(1) which states that such motions should be brought on "[a]s soon as practicable after the commencement of an action brought as a class action," and Civil Rule 11A(c) of this Court which provides that "[w]ithin sixty (60) days after the filing of a pleading asserting a claim for or against a class, the party asserting that claim shall move for a determination under Fed.R.Civ.P. 23(c)(1) as to whether the action is to be maintained as a class action and, if so, the membership of the class."

While the language of such provisions may seem on its face to support defendants' claim of untimeliness, the application of these provisions by the courts has produced a great deal of flexibility in adapting to the particular fact patterns of individual cases. A leading example of the non-mechanical approach which the courts have adopted is Judge Frankel's opinion (and supplemental opinions) in the case of *Rothman v. Gould,* 52 F.R.D. 494 (S.D.N.Y.1971). In that case, which like the instant case was originally pleaded as a class action, plaintiff failed for over two years to make a motion for class certification. Then, having come to an individual settlement with the defendants, plaintiff in an unopposed motion sought the court's indulgence to terminate the class action aspect of the case. Judge Frankel refused to take such action, citing the interests of potential members of the class. He took such action despite the fact that plaintiff had clearly not complied with local Civil Rule 11A which, as noted above, requires a motion for class certification to be made

within 60 days of pleading such a class action.

Such exercise of judicial discretion has been frequently applied where the claim of untimeliness is raised in regard to a class certification motion. *See, e. g., Feder v. Harrington,* 52 F.R.D. 178, 181–82 (S.D.N.Y. 1970); *Gilinsky v. Columbia University in City of New York,* 62 F.R.D. 178, 179 (S.D. N.Y.1974). Indeed, it is specifically sanctioned under local Civil Rule 11A(d). Under that provision, when a party in plaintiff's position has failed to act within 60 days, an opposing party is allowed an additional 30 days to move to dismiss the action as a class action. "In ruling upon such a motion," the rule concludes, "the court may grant or deny it in the exercise of its informed discretion; may deny it, but award costs, expenses and counsel fees against the party seeking the maintenance of the claim as a class action or his counsel; or may grant such other relief as may be appropriate in all the circumstances."

In the instant case, a weighing of the relevant factors compels this court to act favorably on the plaintiff's motion for class certification. In the first place, defendants Lehman Brothers and Simon cannot claim themselves to be unfairly prejudiced by such disposition. As noted above, local Civil Rule 11A afforded them the right to move to dismiss this action as a class action, yet they never attempted to exercise such right, despite the fact that they have been on notice that plaintiff was bringing this action on behalf of himself and "others similarly situated" since the complaint was filed in 1970. The fact that other defendants have seen fit to enter into a stipulation of settlement on a class action basis reinforces this court's perception that both plaintiff and defendants have consistently assumed that the case would be litigated in a class action context.

Also of great importance is the potential prejudice which would result to members of plaintiff's class should the class certification be denied at this time. The settlement negotiations, which have been continuing since mid-1975 have resulted in a settlement agreement which would afford substantial relief to members of the class, but which would not be afforded them were this motion to be denied. In addition, it is altogether feasible that during the pendency of this action, members of the class have not themselves instituted separate actions, expecting their interests to be duly considered in the instant case. It is unclear what remedies might be available to such parties were they to be denied participation here.

Nor can a persuasive argument be made that plaintiff's activity in this case was so dilatory as to render him unable to "fairly and adequately protect the interest of the class," as required under Rule 23(a)(4). That was the conclusion of this court in *Herbst v. Able,* 45 F.R.D. 451 (S.D.N.Y. 1968) where certain plaintiffs failed to make an adequate class action motion within a given time period specifically allotted to them by this court. While plaintiff has perhaps been less than expeditious in making the present motion, a number of intervening events go far to explicate such delay. They include: 1) a stay of this action from November 15, 1971 through December 1973, promulgated by Judge Tyler because of an SEC action involving the same transactions; 2) hospitalization and surgery of plaintiff and plaintiff's counsel during 1974; and 3) a period, from April 1975 through February 1976, when parties to this action were unaware that this case had been reassigned to this judge following Judge Tyler's resignation, because of apparent inadvertence in the Clerk's Office of this District. Furthermore, the fact that plaintiff did pursue possible settlement in this case, and indeed has produced tangible results, indicates that his representation of the class has not been inadequate.

Accordingly, plaintiff's motion is granted and it is hereby ordered that this action be maintained as a class action on behalf of all individuals who purchased the common stock of Lum's, Inc. on January 9, 1970.

SO ORDERED.