J. AXELROD and A. Wolgin, on behalf
of themselves and all others
similarly situated

v.

SAKS & COMPANY, Bergdorf Goodman,
Inc. and Genesco, Inc., d/b/a
Bonwit Teller.

Mitzi ADIS and Linda Rodos, on behalf
of themselves and all others
similarly situated

v.

SAKS & COMPANY, Bergdorf Goodman,
Inc. and Genesco, Inc., d/b/a
Bonwit Teller.

Lois SQUIRES

v.

Barrie SOMMERFIELD, Leonard Hankin,
Andrew Goodman, John Merrick, Mer-
rick Retail Reports, Inc., Bergdorf
Goodman, Inc., Carter Hawley Hale
Stores, Inc., Saks & Company, and Gen-
esco, Inc., d/b/a Bonwit Teller.

Civ. A. Nos. 76–3805, 76–4011 and 77–172.

United States District Court,
E. D. Pennsylvania.

Jan. 9, 1978.

David Berger, H. Laddie Montague, Jr., Merrill G. Davidoff, Philadelphia, Pa., Richard D. Greenfield, Philip S. Fuoco, Bala Cynwyd, Pa., for plaintiffs in No. 76–3805.

Gerard J. St. John, Philadelphia, Pa., for Saks.

Edith G. Laver, Philadelphia, Pa., John H. Schafer, III, Virginia G. Watkin, Washington, D.C., for Bergdorf Goodman.

Patrick T. Ryan, Philadelphia, Pa., for Genesco (Bonwit Teller).

Leonard Barrack, Philadelphia, Pa., for plaintiffs in No. 76–4011.

Peter Hearn, Philadelphia, Pa., for Bergdorf Goodman and Genesco.

Emanuel G. Weiss, Philadelphia, Pa., Ira Jay Sands, New York City, for plaintiffs in No. 77–172.

John C. Grosz, Solinger & Gordon, New York City, for Saks.

Patrick T. Ryan, Philadelphia, Pa., Donovan, Leisure, Newton & Irvine, New York City, for Genesco.

## OPINION

LUONGO, District Judge.

These three antitrust actions, which are consolidated for all purposes by the accompanying order, are before me on the plaintiffs' motion for class action certification. Fed.R.Civ.P. 23. The defendants vigorously oppose certification on a variety of grounds. For the reasons set out in this opinion, I conclude that certification under Rule 23(b)(3) is proper.

The Axelrod complaint, filed on December 10, 1976, and amended on February 4, 1977, names as defendants the corporations that operate three department stores—Saks Fifth Avenue, Bergdorf Goodman, and Bonwit Teller. It alleges that they "have been engaged in a combination and conspiracy in

unreasonable restraint of . . . interstate trade and commerce in women's clothing," in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). Complaint ¶ 15. In particular, it alleges the existence of a conspiracy "to raise, fix, stabilize and maintain retail prices of women's clothing." *Id.* ¶ 15. These unlawful aims are alleged to have been furthered through the defendants' practices of

> "(a) Establishing uniform retail prices through the adoption of uniform mark-up lists and maintaining adherence to such prices in New York and all branch stores including those stores in which plaintiffs and the members of the class they represent made their purchases;
>
> (b) Inducing manufacturers to use such uniform retail prices as manufacturers' suggested retail prices and to withhold women's clothing from retailers who sell below such uniform prices; and
>
> (c) Establishing dates for the beginning of clearance periods during which such uniform retail prices are reduced."
>
> *Id.* at ¶ 17.

Axelrod seeks treble damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15 (1976). Jurisdiction is based on 28 U.S.C. § 1337 (1970).

The Adis complaint, filed on December 30, 1976, contains allegations that parallel those contained in the Axelrod complaint. The Squires complaint, as originally filed on January 17, 1977, was somewhat broader than either of the others; it named as defendants the operators of two other stores in addition to Saks Fifth Avenue, Bergdorf Goodman, and Bonwit Teller, as well as several individual defendants. The amended Squires complaint, filed on February 22, 1977, is limited to the three stores named in the Axelrod and Adis complaints, however, and the individual defendants named in the Squires complaint were dismissed pursuant to a stipulation on August 29, 1977.

Bergdorf Goodman, Inc. filed its answers on February 18, 1977 (Axelrod complaint), March 9, 1977 (Adis complaint), and April 29, 1977 (Squires complaint). Saks & Company filed its answers on February 18, 1977 (Axelrod complaint), March 1, 1977 (Adis complaint), and May 19, 1977 (Squires complaint). Genesco, Inc., which operates the Bonwit Teller stores, filed its answers on February 22, 1977 (Axelrod complaint), March 3, 1977 (Adis complaint), and May 24, 1977 (Squires complaint).

The plaintiffs seek to represent a class consisting of all charge account customers of Saks Fifth Avenue, Bergdorf Goodman, and Bonwit Teller whose names appear in the defendants' billing records and who have billing addresses outside the New York Metropolitan Area,[1] and reside in Bucks, Chester, Delaware, Montgomery, or Philadelphia counties in the Commonwealth of Pennsylvania, or in Burlington, Camden, or Gloucester counties in the state of New Jersey, or in the state of Delaware, and since January 1, 1968, have by mail, by phone, or in person bought from the stores operated by the defendants women's clothing with an aggregate retail value of $250 or more, which purchases were made on charge accounts opened by such stores. Plaintiffs' Motion for Class Action Determination (Document No. 20), *Axelrod v. Saks & Co.*, No. 76–3805, at 1.

The defendants contend that certification is improper because, *inter alia*, the named plaintiffs' claims are not typical of the claims of other class members; the ultimate determination of any damages to be paid to individual class members will require many thousands of "mini-trials," including trials of various counterclaims to be asserted by the defendants; and preparation of the required notice to absent class members will be both costly and time-consuming.

■ The basic prerequisite to the maintenance of a class action is stated in Rule 23(a), which provides:

> "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

---

1. This term is defined in *Dennis v. Saks & Co.*, 1975–2 Trade Cas. (CCH) ¶ 60,396, at 66,746 n.1 (S.D.N.Y.1975), a case similar to the one *sub judice.*

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

As to numerosity, there can be no colorable objection to certification. The plaintiffs estimate that the proposed class will have 25,000 members, and the defendants evidently regard this estimate as conservative. *Compare* Plaintiffs' Memorandum in Support of Their Motion for Class Action Determination (Document No. 20), *Axelrod v. Saks & Co.*, No. 76–3805, at 5, 12 *with* Defendants' Memorandum in Opposition to Motions for Class Action Certification (Document No. 45), at 52 n.*. The joinder of 25,000 parties would plainly be impracticable. *See* 3B Moore's Federal Practice ¶23.-05, at p. 23–273 (2d ed. 1948) ("[A] number exceeding a thousand is obviously sufficient to justify a class action.").

■ The commonality requirement similarly presents little difficulty here. Under Rule 23(a)(2), of course, "not every question of fact and law must be common to every member of the class." *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa. 1974). But in this case, each question of fact or law bearing on the defendants' liability *is* common to every member of the class. This is so because if the plaintiffs can prove the existence of a conspiracy that resulted in prices being fixed at a higher level than would have been reached under competitive conditions, the defendants will then be jointly and severally liable to all class members who were injured by their activities. *See Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 11 (N.D.Ga.1973); *Washington v. American Pipe & Constr. Co.*, 280 F.Supp. 802, 804 n.4 (S.D.Cal.1968). A class member obviously need not have made purchases at all three stores in order to have been injured by a price-fixing conspiracy

that established anticompetitive prices at all three stores. Thus, questions bearing on the liability of any single defendant will be common to all class members, including those who made no purchases from the store operated by that defendant. This satisfies the commonality requirement of Rule 23(a)(2).

■ The typicality requirement of Rule 23(a)(3) is also easily satisfied here. As Judge Werker stated in *Dennis v. Saks & Co.*, 1975–2 Trade Cas. (CCH) ¶ 60,396 (S.D. N.Y.1975), a case parallel to the one *sub judice* : "Although different items of clothing were purchased by class members, the [basic] claim of each plaintiff rests on the existence of a price fixing conspiracy on the part of the defendants." *Id.* at p. 66,747. Furthermore, the defendants' principal argument on typicality was premised on a class definition that counted purchases made at any of the defendants' stores in the United States toward the $250 threshold required for membership in the class. Defendants' Memorandum in Opposition to Motions for Class Certification, at 11–12. Inasmuch as I have determined that class membership should be limited to those making qualifying purchases at the defendants' stores in the Philadelphia Metropolitan Area[2] and the New York Metropolitan Area,[3] the defendants' contention that the named plaintiffs' claims are not typical of the claims of a "nationwide class" is no longer pertinent.

Finally, Rule 23(a)(4) requires adequate protection of the class members' interests. *See also* Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23*, 123 U.Pa.L.Rev. 1217, 1224–29 (1975). "The traditional criteria by which to assess the adequacy of a plaintiff's representation under 23(a)(4) are: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests

---

**2.** The Philadelphia Metropolitan Area is composed of Bucks, Chester, Delaware, Montgomery, and Philadelphia counties in the Commonwealth of Pennsylvania, Burlington, Camden,

and Gloucester counties in the state of New Jersey, and the state of Delaware.

**3.** *See* note 1, *supra* ; discussion, *infra.*

that are antagonistic to those of the class." *Presseisen v. Swarthmore College*, 71 F.R.D. 34, 45 (W.D.Pa.1976); *see Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

▮ The defendants' principal contention as to adequacy is that the five remaining named plaintiffs[4] are insufficiently "informed and active" to be adequate representatives. Defendants' Memorandum in Opposition to Motions for Class Action, at 37. In particular, they contend that the named plaintiffs "are basically unfamiliar with the status of their cases, unaware of who their co-plaintiffs or counsel are or how they came to join in the case and know *nothing at all* about *any* facts underlying the complaint." *Id.* 44–45 (emphasis in original). I find this contention unpersuasive. To begin with, the defendants' characterization is based largely on the named plaintiffs' unfamiliarity with such procedural aspects of their cases as joinder of co-plaintiffs and consolidation for trial. This gap in the named plaintiffs' information about their cases, however, has little or no bearing on their adequacy as representatives. Second, the defendants' characterization apparently reflects their disdain for antitrust plaintiffs, such as those in this case, whose knowledge of the facts that amount to an antitrust violation derives partially or entirely from secondary sources such as newspaper stories. *Id.* 38, 39, 41, 42, 43, 45. It should suffice to say that a would-be class representative in a complex antitrust case need not have, and often will not have, personal knowledge of facts sufficient to make out a prima facie case. *E. g., Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 146–47 (E.D.Pa.1976). Finally, the defendants' underlying concern that lawyers "not be free to wield so potent a weapon as a class action, without a real client to answer to," while not unappealing when stated as an abstract proposition, is fully answered by Chief Judge Lord's response to the same contention in *Chevalier v. Baird Sav. Ass'n, supra*:

"The supposed unfettered discretion of counsel does not trouble us. Most lawyers, especially when representing unsophisticated litigants, have some degree of flexibility in their actions. Before counsel settle or dismiss this case, rule 23(e) requires our approval. Any fees to be paid counsel out of a monetary recovery would be awarded by the court, which has an obligation to protect the interests of the class members. *See In re Coordinated Pretrial Proceedings, Etc.*, 410 F.Supp. 680, 690 (D.Minn.1975). Further, if at any time we felt that counsel were not acting in the best interests of their clients, we would not hesitate to consider appropriate action pursuant to rule 23." 72 F.R.D. at 147.

As to the ability of the named plaintiffs' counsel, I am satisfied that they are fully capable of conducting the proposed class action, with its attendant complexities. In short, the prerequisites of Rule 23(a) have been satisfied.[5]

---

**4.** Axelrod withdrew as a plaintiff and class representative pursuant to an order entered on October 3, 1977. Wolfe and Blumenthal are the remaining named plaintiffs from the original Axelrod complaint. Adis and Rodos were the named co-plaintiffs and class representatives in the original Adis complaint, while Squires was the sole plaintiff and class representative in the original Squires complaint. The three actions are consolidated for all purposes.

**5.** Although the defendants do not seriously contend that the named plaintiffs are unable or unwilling to bear the cost of sending the required notice to absent members of the proposed (b)(3) class, I fully share their sense of incredulity at the following colloquy taken from Adis' deposition:

"Q  Do you know how many people we are talking about in your class?
A  Approximately 25,000.  I'm not sure.
Q  So it would cost mailing cost for 25,000 people?
A  Approximately.
Q  It might cost more for whatever you insert?
A  It could.
Q  Are you prepared to spend $100,000?
A  Yes.
Q  You are?
A  Yes.

The plaintiffs seek certification of the proposed class under Rule 23(b)(3), which provides:

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.     .     .     .     .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Q  Are you able to spend $100,000?
A  Yes.
        *     *     *     *     *     *
Q  Are you prepared to spend $200,000?
A  Yes.
Q  $300,000?
A  Yes.
Q  Whatever it costs you are prepared to spend?
A  Yes.
Q  Is there any limit on the amount you are prepared to spend?
A  There's no limit."
Adis Deposition at 48–49.
*See also Chevalier v. Baird Sav. Ass'n,* 72 F.R.D. 140, 147 n.15 (E.D.Pa.1976).

**6.** The Advisory Committee's Note reads in part:
"The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found,

The defendants raise several objections to certification under Rule 23(b)(3), none of which are compelling.

■  First, the defendants argue that the laborious individual determinations of damages that would follow a determination of classwide liability predominate over the common questions of law and fact that would be tried in determining liability. Each side cites to numerous decisions that find classwide liability issues to be predominant over individual damages issues, or vice-versa. As I read the Advisory Committee's Note on the 1966 amendments to Rule 23(b)(3), however, common questions may be said to predominate where the individual questions go only to the amount of damages, rather than to the existence of liability or the applicability of various defenses.[6] I will therefore adopt the approach followed by Judge Werker in *Dennis v. Saks & Co.,* 1975–2 Trade Cas. (CCH) ¶ 60,396 (S.D.N.Y.1975), a case brought on behalf of charge account customers residing in the New York Metropolitan Area that involved claims virtually identical[7] to those asserted here:

for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed. [Citations omitted.] A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. [Citations omitted.] Private damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions. [Citations omitted.]"
Proposed Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966).

**7.** One significant factual distinction between this case and *Dennis* is that the class certified in *Dennis* had approximately 613,000 members, whereas the class proposed by the plaintiffs has approximately 25,000 members. *See Den-*

"It is the court's conclusion that at this point, the defendants' assertion that measuring the impact of the conspiracy and calculating individual damages will be an unmanageable task should not defeat plaintiffs' motion. The facts are too bare to reach such a conclusion. However, when discovery is completed if it appears that, contrary to plaintiffs' assertion, no general measure of damages can be proven and that any trial will involve separate analysis of the impact of the conspiracy on thousands of different styles of clothing, then the court, pursuant to the flexibility in Rule 23, will reconsider class certification."

*Id.* at p. 66,749.

The defendants argue further that even if the common questions do predominate over the individual questions, the latter will be so complex and difficult to resolve that the proposed class action cannot be said to be "superior" to other methods of resolving this dispute. Fed.R.Civ.P. 23(b)(3).

"Here, defendants' computers would be of little assistance in determining damages. One cannot even tell from the computerized data of any of the defendants how much women's clothing any customer purchased during most of the relevant period. Only a manual examination of customer records could establish whether customer X ever bought women's clothing, or that customer Y bought a particular style dress at a particular price, or that customer Z bought a coat but returned it. Only a manual comparison between the sales records and vendors' invoices would establish whether merchandise was priced in accordance with a markup list or by some other means.

Without repeating the painstaking processes necessary to assess individual damages, suffice it to say that hundreds of thousands of customers, and millions of documents, are involved, and that

these processes are estimated to consume hundreds of man years and millions of dollars of cost."

Defendants' Memorandum in Opposition to Motions for Class Certification, at 19–20 (footnote and citations to affidavits omitted).

■ The plaintiffs do not contend that damages in this case can be determined conveniently or inexpensively. Rather, they urge that a class action is superior to other methods of dispute resolution, notwithstanding the complexities of determining damages, because no "other available methods for the fair and efficient adjudication of the controversy" exist. Fed.R.Civ.P. 23(b)(3). I conclude that a class action *is* superior to other methods—indeed, "in view of the small amount of individual recovery and the many class members it may be the only possible way in which potentially aggrieved persons may recover." *Dennis v. Saks & Co., supra,* at 66,750. The manageability problems emphasized by the defendants will, in all likelihood, be confined to the damages phase of this case; moreover, although that phase may be complicated and time-consuming, I do not anticipate that it will be unmanageable.

■ The defendants also contend that thousands of the class members will be customers whose accounts are delinquent, and who will therefore be subject to counterclaims by one or more of the defendants. As to those class members, the defendants argue, the presentation of counterclaims and defenses thereto will require "mini-trials," and will render the damages phase of this case utterly unmanageable. I cannot accept this contention. Assuming *arguendo* that an absent class member is an "opposing party," Fed.R.Civ.P. 13, against whom a counterclaim may be asserted, it appears at this point that any claims based on delinquent accounts would be permissive, rather than compulsory, counterclaims. *See Great*

nis v. Saks & Co., supra, at p. 66,747. Although the *Dennis* case was settled before trial, the class action certified by Judge Werker, had it been tried, would have raised the same liability issues as does this case and many more

complicated individual damages issues than are presented here. Accordingly, it would be difficult to justify a holding that here, unlike in *Dennis*, common questions do *not* predominate over individual questions.

*Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961) (counterclaim is compulsory only where "separate trials on each of [the opposing parties'] respective claims would involve a substantial duplication of effort and time"). A district court may not, of course, entertain a permissive counterclaim unless an independent jurisdictional basis for it exists. *E. g., United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1080 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970). Thus, the only counterclaims that I could hear in this case would be those that involved (1) an amount in excess of $10,000, and (2) a defendant and a class member of diverse citizenship. 28 U.S.C.A. § 1332(a)(1) (Supp.1977). Counterclaims that satisfy both requirements will, in all likelihood, be so few as to present no serious impediment to the management of this class action.

■ Finally, the defendants argue that the plaintiffs have not carried their burden in regard to identifying the class members and preparing the notice that must be sent to absent class members. Fed.R.Civ.P. 23(c)(2). In essence, the defendants concede that identification and proper notice will be practicable, but emphasize that they will be both costly and time-consuming. Suffice it to say that these burdens will rest squarely with the named plaintiffs and their attorneys, but that I see no reason to assume that these burdens will not be carried at the appropriate time.

For the reasons stated above, the motions for class action certification will be granted. I note one caveat. If it should appear at any stage of the pretrial proceedings that the purchases made by class members at stores in the New York Metropolitan Area are relatively insignificant, and that inclusion of the New York purchases would unduly complicate even the liability phase of this case, I will at that time consider narrowing the scope of the case to include only purchases made at stores in the Philadelphia Metropolitan Area.