**In re Louis FLEET, Debtor.**

**Louis FLEET, Sarah Morrison, Philadelphia Unemployment Project on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**UNITED STATES CONSUMER COUNCIL, INC., Jack Rhode, Betty Rosi, Deborah Tavares, Defendants.**

**Bankruptcy No. 81–04969K.**
**Adv. No. 83–0880K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 18, 1987.

Wayne Powell, Barry J. Hockfield, Cherry Hill, N.J., for defendants.

Henry J. Sommer, Gary Klein, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Presently before us in this long-outstanding proceeding is a Motion for Class Certification by the Plaintiffs. We reject the Defendants' principal argument that the Motion should be denied because it was not filed until the case was over four years old, holding that any unfair prejudice arising from the Plaintiffs' delay is, for the most part, cured by our further holding that the default entered against the Defendants does not extend in its effect to unnamed class members. We also reject the Defendants' arguments that the elements of commonality or adequacy of representation are lacking and find all of the prerequisites to maintain a class action set forth in Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 23(a) present.

However, we also hold that the fact that the Defendants are no longer doing business renders the only practical relief for unnamed class members to be strictly monetary relief. Therefore, we conclude that the matter may be maintained as a class action pursuant to F.R.Civ.P. 23(b)(3) only. Since the Plaintiffs have not addressed the issues of provision and cost of notice to unnamed class members, pursuant to F.R. Civ.P. 23(c)(2), or their proposed methodology for handling these claims, we shall only grant the Plaintiffs' Motion conditionally, dependent on a practical resolution of these issues. We shall schedule a subsequent hearing to attempt to resolve these issues and expedite a final resolution of the matter.

The history of this proceeding, from the date of its filing on March 31, 1983, through February 2, 1987, is recited in detail in our Report and Recommendation of

that date addressing a Motion of Defendant JACK RHODE to set aside a "default judgment" entered against him by the Honorable James McGirr Kelly of the district court on June 12, 1986. Our Report of February 2, 1987, recommending denial of Rhode's Motion, was adopted by Judge Kelly in an Order of March 2, 1987, and is reported at 70 B.R. 845 *sub nom. Fleet v. United States Consumer Council, Inc.*

The factual averments set forth in the Complaint are summarized in another decision in the case, reported at 53 B.R. 833, an Opinion of our predecessor, the Honorable William A. King, Jr., of October 15, 1985, denying the Defendants' Motion to dismiss this action on the grounds that subject matter jurisdiction and in personam jurisdiction over the Defendants was lacking.

This matter has taken the form of a class action since it was filed on March 31, 1983. The Complaint, at paragraph 10, averred that it was maintained on behalf of the following class:

all ... persons [other than the named Plaintiffs] who have paid any sum of money to defendants for advice regarding bankruptcy or any other legal matter, for assistance in preparing a bankruptcy case or for any other legal services, or for assistance from defendants as expert financial consultants.

The Complaint invokes both F.R.Civ.P. 23(b)(2) and 23(b)(3), and requests, *inter alia,* a declaration that the Defendants are liable to each class member for treble damages under the applicable Pennsylvania or New Jersey "UDAP" statutes (laws regulating unfair or deceptive acts and practices); assessment for damage "in the case of each individual [class?] plaintiff;" and an injunction preventing further allegedly illegal actions by the Defendants.

The Plaintiffs filed the instant Class Motion, accompanied by a rather brief (seven-page) Memorandum of Law, on June 10, 1987. A hearing was scheduled on July 8, 1987. In light of the periodic silences which have emanated from defense counsel (see 70 B.R. 846, 847, 848, 849, paragraph one of district court's Order, Proposed Findings of Fact, ¶s 11, 13, 16, 17, 32), we were somewhat surprised to note that a Memorandum of Law in opposition to the Plaintiffs' Motion was filed by the said counsel prior to the hearing, on June 26, 1987. After oral argument on July 8, 1987, we requested further briefing from counsel, the Plaintiffs to file same on or before July 24, 1987, and the Defendants to file on or before August 7, 1987.

The Defendants' opposition dwelt upon three issues: (1) The Plaintiffs' delay of over four years from the date of filing their Complaint to the date of the filing of the class motion, purportedly in violation of Local Rule of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania (hereinafter referred to as "L.R.Civ.P.") 27(c), which requires such a Motion to be filed within ninety (90) days of the filing of the Complaint; (2) Lack of sufficient commonality, because the Complaint was based upon alleged misrepresentations to the Plaintiffs which must perforce involve somewhat differing fact situations and because the laws of two states, Pennsylvania and New Jersey, were in issue; and (3) Lack of adequate representation of the class by the Plaintiffs, due to their failure to timely move for class certification. The argument on July 8, 1987, and the subsequent Briefs of the parties, focus almost exclusively on these issues, and admittedly we raised no other issues at the argument.

Further reflection, however, causes us to recognize that there are other questions of utmost importance which demand our attention, *i.e.,* determining under which of the subsections of F.R.Civ.P. 23(b) this matter may be maintained and whether the Plaintiffs can meet the criteria imposed by F.R.Civ.P. 23(b)(3), the only subsection of F.R.Civ.P. 23(b) under which we ultimately determine that it can be maintained.

Our approach shall be to first discuss the timeliness issue and its impact on the case. We shall then discuss the general class prerequisites set forth in F.R.Civ.P. 23(a), with emphasis on the issues raised by the Defendants in their opposition to the Motion. Then, we shall address the subsections of F.R.Civ.P. 23(b), and indicate pur-

suant to which subsection we believe that this matter may be maintained. Finally, having determined that the action can be maintained pursuant to F.R.Civ.P. 23(b)(3) only, we raise issues which we consider unresolved and necessary for resolution if this proceeding is to be successfully maintained as a class action pursuant to F.R. Civ.P. 23(b)(3), and establish a schedule for the resolution of these issues.

### B. THE MOTION WILL NOT BE DENIED ON THE GROUND OF UNTIMELINESS, WITH THE CAVEAT THAT THE DEFAULT ENTERED AGAINST THE DEFENDANTS SHALL APPLY ONLY TO THE ISSUE OF LIABILITY AS TO THE NAMED PLAINTIFFS, AND NOT AS TO ANY UNNAMED CLASS MEMBERS

The Defendants' reliance upon L.R.Civ.P. 27(c), which requires that a class motion must be filed within ninety (90) days of the filing of a Complaint as a means of defeating the Motion is, strictly speaking, misplaced. Some bankruptcy courts have adopted the local rules of their respective district courts or incorporated same into their own local rules. However, this Court's adoption of local rules which are in several respects dissimilar from those of the district court[1] manifests that this Court has not done so. Therefore, L.R.Civ.P. 27(c) is not applicable here.

However, this is the beginning rather than the end of our analysis. The district court rule was promulgated to give shape to the first sentence of F.R.Civ.P. 23(c)(1), which provides as follows:

> (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or

amended before the decision on the merits.

The district court's local rule has been upheld as a valid vehicle for enforcement of F.R.Civ.P. 23(c)(1). *Walton v. Eaton Corp.,* 563 F.2d 66, 74–75 & n. 11 (3d Cir.1977). A very sophisticated district court, the Southern District of New York, has reduced the period for filing a class determination motion subsequent to the filing of a Complaint to only sixty (60) days. *See, e.g., Walker v. Columbia University,* 62 F.R.D. 63, 64 (S.D.N.Y.1973). What we can deduce from these local rules, even if they are not strictly applicable here, is that courts confronted with class motions have a mandate to see that such motions are presented, per F.R.Civ.P. 23(c)(1), "as soon as practicable," and that a 90–day period is considered a sufficient time, in normal circumstances, to do so.

We do note that such local rules are not interpreted inflexibly, and that at least brief time dispensations in addition to those authorized are frequently accorded to moving parties, where equitable considerations suggest that they should be. *See, e.g., Goodman v. Lukens Steel Co.,* 777 F.2d 113, 125 (3d Cir.1985) (class certification Motion even after appeal may be appropriate); *Robert Alan Ins. Agency v. Girard Bank,* 107 F.R.D. 271, 274 (E.D.Pa.1985) (two month delay beyond local rule period excused); *Pabon v. McIntosh,* 546 F.Supp. 1328, 1331–32 & n. 4 (E.D.Pa.1982) (delay of over two years excused); *Sanders v. Lum's, Inc.,* 76 F.R.D. 1, 2–3 (S.D.N.Y. 1976) (delay of over six years excused despite local rule requiring motion to be filed within 60 days); and *Muth v. Dechert, Price & Rhoads,* 70 F.R.D. 602, 606–07 (E.D.Pa.1976) (delay of two years excused).

On the other hand, even when no local rules are in place or are applicable, courts have, in numerous instances, denied certification when the lapse between the filing of the Complaint and the class motion is less

---

**1.** One example is Local Bankruptcy Rule (hereinafter referred to as "L.B.R.") 9014.1, our Motion rule, which is quite dissimilar to that of the district court, L.R.Civ.P. 20. We also have not adopted the district court's rules relating to discovery, L.R.Civ.P. 24. When this Court wishes to promulgate a rule addressing a topic which is also addressed in the L.R.Civ.P., we have done so by adopting our own rules. *Compare, e.g.,* L.B.R. 9010.1 *with* L.R.Civ.P. 18 (withdrawal by counsel).

than the 50–month period in issue here. *See, e.g., Trotter v. Klincar,* 748 F.2d 1177, 1184–85 (7th Cir.1984) (70–day delay held to bar certification); *Disabled in Action of Baltimore v. Bridwell,* 593 F.Supp. 1241, 1244–45 (D.Md.1984) (delay of less than three years held to bar certification); and *Dudo v. Schaffer,* 91 F.R.D. 128, 136 (E.D. Pa.1981), *certification to appeal denied,* 93 F.R.D. 524 (E.D.Pa.1982) (11 1/2–month delay held too long in case where class motion was resubmitted, and hence local rule was inapplicable).

We believe that the more thoughtful cases on this topic focus upon two considerations: (1) Does the moving party have a justifiable reason for delay? and (2) Is the opposing party unfairly prejudiced by the delay? We should further observe that we consider the second of these questions to be the more important of the two.

In the instant case, the Plaintiffs justify their delay by pointing to the lack of cooperation of the Defendants in making necessary discovery even when ordered to do so, the delay of this Court in holding the Defendants' Motion to Dismiss under advisement for over two years, and the necessary replacement of lead counsel by the elevation of the Plaintiffs' original lead counsel, the Honorable Bruce Fox, to the bankruptcy court bench. Cases apparently supporting the Plaintiffs in the argument that pendency of discovery may justify delay are *Eirhart v. Libbey-Owens-Ford Co.,* 89 F.R.D. 424, 419 (N.D.Ill.1981) (delay to complete discovery not unusual); and *Smith v. Community Federal Savings & Loan Ass'n,* 77 F.R.D. 668, 671–72 (N.D. Miss.1977) (court reluctantly accepts rationale of pending discovery as cause for delay). However, in *Cottone v. Blum,* 571 F.Supp. 437, 440 (W.D.N.Y.1983), this explanation is rejected with the comment that "[t]his court is unaware of any rule which provides for the moving for class action certification only after interrogatories or other discovery requests have been complied with."

Arguments analogous to the argument raised here that confusion caused by changes in counsel is a justification for delay has also yielded varying results. *Compare Disabled In Action, supra,* 593 F.Supp. at 1245 (confusion indicates lack of clear ability to provide adequate representation); *with Pabon, supra,* 546 F.Supp. at 1332 (confusion is justification for delay).

■ In the instant case, we are inclined to agree with the Plaintiffs that the Defendants have been less than reasonably cooperative, in discovery and in litigation tactics, and that this factor justified some delay on their part. However, the magnitude of the delay here cannot be reasonably attributed to this factor alone. We fail to see where the discovery that has now taken place has done much except possibly quantify the undisputed element of numerosity, per F.R.Civ.P. 23(a)(1). While the procedural history of this case is most unusual, punctuated by the selectively sporadic advocacy by the Defendants' counsel, this factor, we think, should have spurred the Plaintiffs' counsel to request a prompt class determination, not let this important issue be forgotten in a morass of confusion. We see no real reason why the Plaintiffs could not have promptly filed a class motion, irrespective of the pendency of other matters. In fact, the filing of such a motion may have helped to give shape to an otherwise formless case.

■ We believe that this delay may have substantially prejudiced unnamed class members. An early class determination and provision of some notice to these parties, shortly after they had done business with the Defendants, would have clearly yielded a better response than any notice is sure to produce now, five or more years after the Defendants have gone out of business. However, facing reality causes us to recognize that participation in this action and representation by the Plaintiffs' counsel, Community Legal Services, Inc. (hereinafter referred to as "CLS"), which provides free services to indigent persons, is certainly the least expensive and very likely the only representation that unnamed class members are likely to get. It is certainly difficult to see how we would be doing anything but severely heightening the prejudice to unnamed class members if

we closed the door on the Plaintiffs' attempts to represent them in this action.

■ The element of prejudice to unnamed class members brings us to what we indicated is the most important element to be considered: whether the Plaintiffs' unjustified delay has resulted in unfair prejudice *to the Defendants*. Cases which have refused to deny tardy class motions because of an absence of a showing of unfair prejudice to the Defendants include *Stolz v. United Brotherhood of Carpenters, etc.,* 620 F.Supp. 396, 402 (D.Nev.1985) (delay of one year found not prejudicial); *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 101–02 (S.D.N.Y.1981) (delay of six years in renewing class motion held not sufficiently prejudicial despite claims of fading memories and unavailability of defense witnesses); and *Muth, supra,* 70 F.R.D. at 606–07 (two-year delay excused because Defendants were at all times aware of class allegations). On the other hand, a class motion was denied on the ground of unfair prejudice to the Defendants in *McCarthy v. Kleindienst,* 741 F.2d 1406, 1411–12 (D.C.Cir.1984) (defendants prejudiced by three-year delay in class certification because this rendered them unaware of the number of adversaries they were facing).

We find the reasoning of *McCarthy* applicable to the facts here, but only to a limited degree. It is true that the Defendants here may well have been put off their guard as to the magnitude of their potential liability by the Plaintiffs' delay in moving for a class determination. Had the Defendants known that their liability could extend beyond a couple of thousand dollars to the named Plaintiffs as a result of this action, they may well have defended with more consistency and vigor. Certainly, it is doubtful that they would have allowed a default judgment to be entered against them had it been clear to them that the magnitude of their liability was open-ended.

The entry of this default judgment itself is worthy of some closer scrutiny. On June 12, 1986, District Judge Kelly entered a "default judgment" against only the corporate Defendant, UNITED STATES CONSUMER COUNCIL, INC. (hereinafter referred to as "USCC") and Rhode "as to liability" only, remanding the matter to this Court on "the question of damages and any other issues which may be outstanding." As we read F.R.Civ.P. 55(b)(2), applicable to this proceeding through Bankruptcy Rule (hereinafter referred to as "B. Rule") 7055, a default "judgment" concerning monetary damages, as opposed to the mere entry of "default," must be as to a sum certain, or a sum determined by the trial court after hearing. The Order of June 12, 1986, does not do so. Furthermore, the Order makes no specific references to, or allowances for, the unnamed class members.

We recognize the force of the statement that "[i]n the interim between the commencement of the suit as a class action and the court's determination as to whether it shall be so maintained, it should be treated as a class suit." 3B J. MOORE, FEDERAL PRACTICE, ¶ 23.50, at 23–396 to 23–397 (2d ed. 1987). Therefore, to some degree, the Defendants must be held to recognize that the action was at all times a class suit, and the Order of Judge Kelly of June 12, 1986, may be read in this light. However, our Court of Appeals, putting a finer point on Moore's statement quoted above, states that "[t]he filing of a class action complaint marks the beginning of what might be termed as a twilight zone that terminates with the Certification Order." *In re Fine Paper Litigation State of Washington,* 632 F.2d 1081, 1086 (3d Cir.1980).

Weighing the prejudice to the Defendants, directly akin to that found sufficient to bar the class certification in *McCarthy,* with the extreme prejudice to the unnamed class Plaintiffs if the class motion is denied, we therefore have determined not to bar the class certification, with the stipulation that our Order cure any potential unfair prejudice flowing to the Defendants. We cannot of course cure some prejudice resulting from fading memories and unavailability of witnesses, but we observe that such prejudice falls evenly on all par-

ties and, like the *Dura-Bilt* court, we do not consider such prejudice sufficient in itself to justify denial of the class motion. The stipulation which we believe suffices is declaring that the Order of June 12, 1986, as to which relief was denied in the District Court's Order of March 2, 1987, applies only to the named Plaintiffs and not as to any unnamed class members. This result seems just because the effect of this Order, entered in the "twilight zone" period of this case, is ambiguous as to its scope in any event.

With this caveat in place, we have no hesitancy in holding that the Plaintiffs' delay in pursuing the class motion, through not entirely justified, is not unfairly prejudicial to the Defendants. As we considered the issue of such potential unfair prejudice as the most important issue to be resolved, we shall not deny the Plaintiffs' class motion on this basis.

## C. ALL THE PREREQUISITES FOR THE MAINTENANCE OF A CLASS ACTION SET FORTH IN F.R.CIV.P. 23(a) ARE MET HERE

In our Opinion in *In re Watts, Watts v. Pennsylvania Housing Finance Co.*, 76 B.R. 390, 396–401 (Bankr.E.D.Pa.1987), we recently analyzed all of the elements of Pa.R.Civ.P. 23(a), which are as follows, in determining that the Plaintiffs there could maintain an action for injunctive and declaratory relief for unnamed class members pursuant to F.R.Civ.P. 23(b)(2):

(1) the class must be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

■ In addition to these prerequisites, one of the alternative provisions of subdivision 23(b) must be met. *Watts, supra,* at 397. We also reiterate, as we did in that case, that we have no hesitancy in concluding that a class action may be maintained, by certain debtors, as representatives of a

class of similarly-situated persons, in bankruptcy court. *Id.* at 396.

We do not understand the Defendants to be contesting the elements of numerosity and typicality and, consistent with our analysis in *Watts, supra,* we find these prerequisites to be rather clearly satisfied here. *See id.* at 397–98, 399. Thus, the prerequisites of commonality and adequacy of representation are the only issues which demand our attention.

■ Several statements which we made in *Watts* relating to the issues of commonality and adequacy of representation are worth repeating as starting points in our discussions of 23(a)(2) and 23(a)(4). Basic to our analysis in *Watts* was recognition that common questions of law *or* fact and a finding that " 'a common core of questions will persist,' " *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 488 (N.D.Ill.1969), "is sufficient to satisfy the requirement of 23(a)(2)." *Id.* at 398. We repeat thusly the statements in *Watts*, at 399:

Numerous decisions have emphasized that variety in the factual patterns of class members does not bar, per 23(a)(2), a class determination. In *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975), the court says:

"It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory."

In *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir.1976), the court states that "[f]actual identity between the Plaintiff's claims and those of the class he seeks to represent is not necessary." Similarly, local courts have emphasized that fluctuation of underlying facts does not defeat commonality, *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 691 (E.D.Pa.1977) (per HIGGINBOTHAM, J.), and that an absence of identical, interchangeable facts among class members does not render a class incompatible with a 23(a)(2) requirement either. *Dick-*

*erson v. United States Steel Corp.*, 439 F.Supp. 55, 61 (E.D.Pa.1977) (per NEW-COMER, J.). As the court states in *Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C.1977):

> "In passing on commonality, it is not appropriate to examine the likeness or relation of the several claims of all members of the class and their representatives. The only proper inquiry is, as the language suggests, whether there is some aspect or feature of the claims which is common to all."

The Defendants cite to *Delaney v. Borden, Inc.*, 99 F.R.D. 44, 44–45 (E.D.Pa. 1983); and *Westlake v. Abrams*, 98 F.R.D. 1, 407 (N.D.Ga.1981) as examples of cases where, because the courts found the factual patterns of the putative class members lacking the requisite commonality, class certification was denied. However, *Westlake* involved an attempt to assert a broad range of securities-law violations and common-law fraud claims on behalf of a plaintiff class against a defendant class. *Delaney* was a products liability action which the court characterized as a "mass tort action, ... involving misconduct by one or more defendants over an extended period of time." 99 F.R.D. at 44.

The Defendants also cite *Casper v. Cunard Line, Ltd.*, 560 F.Supp. 240, 243–44 (E.D.Pa.1983); *Coca-Cola Bottling Company of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168, 170–74, 175–78 (D.Del. 1982); and *Adise v. Mather*, 56 F.R.D. 492, 496–97 (D.Colo.1972), for the principle that alleged violations of the laws of both Pennsylvania and New Jersey render the questions of law too diverse for class treatment. However, *Casper* potentially involved the laws of twenty-six different states and fifteen different countries; *Elizabethtown* involved the laws of thirty-two different states construed over a 60–year period; and *Adise* involved class members situated in thirteen different states. These facts are a far cry from the allegations of the instant case, which include challenges of a few discrete practices (using federal insignias and holding themselves out as experts when they were merely funnels for an attorney and failing to disclose fees) in viola-

tion of the federal Bankruptcy Code and the laws of two contiguous states situated in the same judicial circuit.

The weight of the Defendants' authorities is offset, not only by the reasoning and authorities cited in *Watts, supra*, but the following cases as well: *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 192 (3d Cir.1981) (class certification appropriate even though damages must be resolved on an individual basis); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346–47 (3d Cir. 1977) (need for separate calculations of damages to class members "no reason for barring class relief with respect to the common legal cause"); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449–56 (3d Cir.1977) (common elements and claims suffice); *In re Asbestos School Litigation*, 104 F.R.D. 422, 428–29 (E.D.Pa.1984), *aff'd in part and rev'd in part*, 789 F.2d 996 (3d Cir. 1986) (common nucleus of facts suffices for commonality requirement despite fluctuation in individual facts); *McQuilken v. A & R Development Corp.*, 576 F.Supp. 1023, 1028–29 (E.D.Pa.1983) (sufficient commonality existed despite numerous different factual settings); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 608–09 (W.D.Pa.1983) (similar misrepresentations and omissions raise a common question); *Axelrod v. Saks & Co.*, 77 F.R.D. 441, 446–48 (E.D.Pa.1978) (similar consumer frauds constitute sufficient commonality); and *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192 (E.D.Pa.1977) (challenge of similar credit-reporting practices justifies class treatment).

We believe that the weight of authority therefore clearly supports the conclusion that the element of commonality is present here.

█ The Defendants also challenge the adequacy of the Plaintiffs as representative parties. What we said in *Watts, supra*, 76 B.R. at 400, is equally applicable here:

> Adequacy of representation depends on two factors: "(a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litiga-

tion, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Ins. Co., supra*, 508 F.2d [239,] 247 [ (3d Cir. 1975) ].

In the instant case, the interests of the named Plaintiffs are in no perceptible sense adverse or antagonistic to the interest of any unnamed class members. Further, the Plaintiffs' counsel, CLS [Community Legal Services, Inc.] is an agency whose attorneys are uniquely experienced and qualified in handling comparable litigation.

While the Plaintiffs' attorneys have been less vigilant than they should have been regarding the filing of the class motion, we are certainly not prepared to say that this pronounces their counsel as less than "generally able to conduct the litigation." In the early stages of this case, lead counsel was our present colleague, the Honorable Bruce Fox. At present, lead counsel is Henry J. Sommer, Esquire, a nationally renowned figure who has contributed to COLLIER ON BANKRUPTCY, and has written numerous articles and a manual entitled CONSUMER BANKRUPTCY LAW AND PRACTICE (2d ed. 1985). Both have or had an enviable record in class action litigation. *See, e.g., Finberg v. Sullivan*, 658 F.2d 93 (3d Cir.1981) (en banc); *Henry v. Heyison*, 4 B.R. 437 (E.D.Pa. 1980); and *In re Stevenson*, 49 B.R. 914 (Bankr.E.D.Pa.1985).[2]

We join the following observation made by Judge Davis in *Muth, supra*, 70 F.R.D. at 604:

> as other courts have done, we note that "it is always rather anomalous that the defendants should concern themselves with the adequacy of plaintiff's representation of the class." *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, at p. 79 (E.D.Pa.1975); *see also, Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 (E.D.Pa.1975).

It would be not only ironic but totally inappropriate to deprive the putative class members of all perceptible representation because present counsel is purportedly not proceeding skillfully enough. We decline the invitation to become enmeshed in such a reasoning process, and therefore conclude that the Plaintiffs have satisfied the 23(a)(4) adequacy requirement, along with the other prerequisites of 23(a).

**D. THE PLAINTIFFS' QUEST FOR, BASICALLY, MONETARY DAMAGES RESTRICTS THIS ACTION TO MAINTAINABILITY UNDER 23(b)(3) ONLY**

■ At various points in their Briefs in support of their motion, the Plaintiffs contend that this action is maintainable under either 23(b)(1)(A), 23(b)(2), or 23(b)(3), which provides as follows:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of—

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of

---

**2.** We note that dismissal of a class motion in an analogous case on the grounds of failure to meet the 23(a)(4) requirement, *O'Connell v. David*, 35 B.R. 146 (E.D.Pa.1983), was occasioned by the attempt of the Plaintiffs' counsel there, who was not counsel for the Plaintiffs here, to bring an action against a class of defendants. The court held that the particular named defendants were not adequate representatives.

the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

However, the Plaintiffs present very unsatisfying reasoning on this point. F.R. Civ.P. 23(b)(1)(A), not invoked at all in the Complaint, is mentioned, without analysis, only in a footnote in the Plaintiffs' original Brief, and 23(b)(2) is contended to be an appropriate vehicle because the Complaint recites a request for declaratory and injunctive relief. The Defendants never address the issue of which of the alternatives of 23(b) is the most appropriate.

A comparison of the relief sought here with that in *Watts* is instructive. In *Watts*, the primary goal of the Plaintiffs was to change a policy of a state agency. Thus, injunctive and declaratory relief were prominent, making the case an archetype of the sort of class action contemplated by F.R.Civ.P. 23(b)(2). Also, the Defendants were clearly attempting to apply the challenged conduct in uniform fashion, making 23(b)(1)(A) a very practical alternative basis for class maintenance. Damages for the named parties, let alone unnamed class members, was at best a subordinate issue there.

Here, the Defendants include USCC, a corporate entity which ceased doing business shortly after the institution of this lawsuit, and several of its employees, including its principal, Mr. Rhode. The fact that the corporate defendant is not in business may constitute a mark of success for the Plaintiffs. However, it does suggest that the time of the need for injunctive relief passed. Similarly, it is too late for us to accept as realistic the contention that the Defendants have any concern with protecting themselves from establishment of incompatible standards of conduct. Practically, the only benefit which unnamed class members could receive from this law-

suit at this point is monetary damages from the Defendants, most notably from Mr. Rhode.

The Court of Appeals, in *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3d Cir.1986), observes that "[p]recedent supports the . . . view that an action for money damages may not be maintained as a Rule 23(b)(2) class action." Consistent with this principle is the decision in *Muller v. Curtis Publishing Co.*, 57 F.R.D. 532, 536–37 (E.D.Pa.1973), holding that a 23(b)(2) action cannot be maintained against a defendant that has ceased doing business. To the extent that the decision in *Wetzel, supra*, 508 F.2d at 248–53, is to the contrary, we believe that the reasoning of *Wetzel* has been preempted by the later decision of the Court of Appeals in the *School Asbestos Litigation* and, frankly, we consider this later decision to be the better-reasoned.

We therefore conclude that the Plaintiffs can successfully maintain this action pursuant to F.R.Civ.P. 23(b)(3) only.

E. WHILE IT APPEARS THAT THE PLAINTIFFS CAN MEET ALL OF THE REQUIREMENTS FOR A 23(b)(3) CLASS ACTION, OUR INABILITY TO CONCLUDE THAT THEY CAN PROVIDE THE REQUISITE NOTICE AND MEET THE MANAGEABILITY REQUIREMENT CAUSES US TO CONDITIONALLY CERTIFY THE CLASS

To proceed under F.R.Civ.P. 23(b)(3), the Plaintiffs must make the further showings, in addition to satisfaction of the F.R.Civ.P. 23(a) class-action prerequisites, that the common questions of law and fact "predominate" and that this device is "superior" to any other procedural means for resolving the potential legal questions raised. The rule then recites, at 23(b)(3)(A) through 23(b)(3)(D), four non-exclusive elements which a court must consider in determining whether a given case satisfies these criteria. See 3B J. MOORE, *supra*, ¶ 23.45 [4.–5], at 23–365 to 23–368.

Moore explains the requirement of Rule 23(b)(3)(A) as focusing on the likelihood that unnamed class members will opt

out of the litigation, thus frustrating the conservation of judicial resources justifying the class action in the first place. *See id.,* ¶ 23.45[4.–1], at 23–333 to 23–336. There is no apparent interest of any unnamed class members in opting out of this litigation. Thus, this criterion would appear to be satisfied.

■ There is, to our knowledge, no other litigation concerning the controversy in question pending. *See, id.* at ¶ 23.45[4.–2], at 23–336 to 23–339. Thus, the criterion of 23(b)(3)(B) appears satisfied.

■ There is a distinct advantage to concentrating litigation of these bankruptcy-related issues in this bankruptcy court, which is particularly sensitive to the concerns of debtors and the violations of the Bankruptcy Code asserted. *See id.,* ¶ 23.-45[4.–3], at 23–339 to 23–342. The only other forum which would appear to us equally compatible would be the bankruptcy court sitting in Camden, New Jersey. However, to our knowledge, no comparable action has been commenced there.

■ Finally, at issue is the element of manageability. *See id.,* ¶ 23.45[4.–4], at 23–342 to 23–365. We are, as we indicate below, somewhat concerned about the Plaintiffs' financial ability to provide the requisite notice and how the claims of individual class members will be administered, which relate to the element of manageability. This element causes us to render our class certification a conditional one.

We do observe that we are not put off by any perceived absence of general predominence of questions of law and fact. Many of the cases which we cited with approval on the issue of commonality, for purposes of 23(a)(2), were 23(b)(3) actions. *See School Asbestos Litigation, supra; Bogosian, supra; McQuilken, supra; Steiner, supra;* and *Axelrod, supra.*

However, we are concerned about the issue of notice. F.R.Civ.P. 23(c)(2) provides as follows:

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

Thus, it is clear that, since we have determined that this action can be maintained pursuant to F.R.Civ.P. 23(b)(3) only, "individual notice to all members who can be identified through reasonable effort" is required. Moreover, as *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), established, the Plaintiffs must bear the cost of this notice.

Because none of their pleadings or briefs contain any discussion of how they intend to provide the requisite notice and we have at least a question as to whether they are financially capable of doing so, we are constrained to render our class certification determination as conditional, as we are expressly authorized to do pursuant to F.R. Civ.P. 23(c)(1).

We are also somewhat concerned as to precisely how the Plaintiffs intend us to proceed to resolve the issue of measuring damages to each unnamed class member. If nothing more creative than a mass of mini-hearings is proposed, we may reconsider our conditional class determination.

Therefore, while we believe that the Plaintiffs can, in all probability, meet the requirements of 23(b)(3), the lack of full discussion about the issues of notice and disposition of the claims of the unnamed class members causes us to hesitate to place our imprimatur on this matter as a class action on the ground of potential unmanageability.

Finally, we are greatly concerned about the fact that this case, in which we have just rendered a class determination, is one of the oldest pending adversarial proceedings on our docket. We are therefore directing the Plaintiffs to provide a written submission to us relating their proposal for

submission of notice and for making disposition of the unnamed parties' claims in about twenty days, the Defendants to respond in about ten days thereafter, and scheduling a hearing on these issues shortly thereafter.

An order consistent with the foregoing shall issue.